BUCKLEY v. KANSAS CITY, Appellant.

Division One, March 30, 1900.

1. **Practice: DEMURRER TO EVIDENCE: WHAT IT IMPLIES.** A demurrer to the evidence implies that conceding the truth of everything plaintiff's evidence tends to prove, with all favorable inferences which may fairly be drawn from it, there is still no substantial evidence to warrant a verdict in plaintiff's favor.

2. **Municipal Corporation: SIDEWALKS: LIABILITY FOR DEFECTS: NOTICE.** A city is bound to keep its sidewalks in reasonably safe condition for public use; being liable for defects therein of which it has actual notice, or which have existed for such time that by the exercise of ordinary care they could have been ascertained, and which there has been a reasonable time to remedy.

3. ———: ———: **HIDDEN DEFECTS: CITY NOT LIABLE WHEN.** But in case of a hidden defect, of which the city has no actual notice, the plaintiff can not recover, in the absence of evidence tending to show how long the defect had existed before the accident occurred, or the usual duration of sidewalks of the kind in controversy.

4. ———: ———: **NEGLIGENCE: ERRONEOUS INSTRUCTION.** An instruction is therefore erroneous which does not require as a condition to plaintiff's recovery, either that the city should have actual notice of the defect in question, or that such defect should have existed so long before the accident that the city could have ascertained it by exercising ordinary care.

Appeal from Jackson Circuit Court.—*Hon. John W. Henry,* Judge.

REVERSED AND REMANDED.

*R. B. Middlebrook* for appellant.

(1)  There was no testimony showing when the alleged defective condition of the iron flanges begun, and in the absence of direct notice there was no evidence on which to base notice of any sort to the city.   Baustain v. Young, 152 Mo. 317; Carvin v. Mfg. Co., 52 S. W. Rep. 210; Ruggles v. Nevada, 63 Iowa, 185; Dundas v. Lansing, 75 Mich. 499. (2)  If the defendant, William M. Hall, exercised reasonable care and prudence, as the jury found he did, and he could not discover the defect in question, then there certainly can be no legal basis for holding Kansas City negligent in not discovering what Hall was unable to find after a careful inspection.   Cooper v. Milwaukee, 97 Wis. 458; Burns v. Bradford, 137 Pa. St. 361; Hanscom v. Boston, 141 Mass. 242; Prindle v. Fletcher, 39 Vt. 255; Bonine v. Richmond, 75 Mo. 437.

*Warner, Dean, McLeod & Holden* and *James G. Smart* for respondent.

' (1)   The frame where the accident occurred was broken at its four corners.   This meant the flange was broken at the four corners, since the flange is but the under part of the frame itself.   The breaks at the corners were each over four inches long as shown by the model making over sixteen inches of fracture in one frame, and since the frame adjoining this on the south and the one adjoining it on the north were broken in the same way, the three frames had over forty-eight inches of fracture exposed to view from the street.   These fractures

were visible, open, obvious and apparent, and had existed for at least a year prior to the accident, as shown by the pitch or tar in them. This evidence alone was sufficient to charge the city with notice. Young v. Webb, 51 S. W. Rep. 709; Carrington v. St. Louis, 89 Mo. 208; Squires v. Chillicothe, 89 Mo. 226; Maus v. Springfield, 101 Mo. 613; Benjamin v. Street Railway, 133 Mo. 274; Bonine v. Richmond, 75 Mo. 437; Lockport v. Richarts, 81 Ill. App. 533; Snyder v. Albion, 113 Mich. 275; Riley v. Iowa Falls, 83 Ia. 761. (2). If the duty of the city is measured by the standard reasonable care, and anything short of reasonable care is negligence, then it follows that defects are not hidden or latent if they are discoverable by the exercise of reasonable care. La Salle v. Porterfield, 138 Ill. 114; Vanderslice v. City of Phila., 103 Pa. St. 102; Will v. Mendon, 108 Mich. 251; Fairbury v. Rogers, 98 Ill. 554. Those using the sidewalk have a right to presume that it is in a reasonably safe condition. The duty is not upon them, but upon the city, to keep it in such condition. Hence, the fact that one or more passing over the sidewalk did not notice the defect does not signify that the city would not have known of its existence by the exercise of reasonable care and caution. Squires v. Chillicothe, 89 Mo. 232; Roe v. City of Kansas, 100 Mo. 193. (3) The sidewalk in question was practically a bridge over an excavation sixteen feet deep. On this sidewalk thousands of people walked every day, "it being diagonally across from the postoffice," and in the business center of the city. These facts are to be considered in determining the question of notice, for what might not be negligence in not knowing of a dangerous condition of a walk at one locality would be gross negligence at another. Carrington v. St. Louis, 89 Mo. 213; Frank v. St. Louis, 110 Mo. 523. Nor will the court in determining whether the city ought to have known of the defects ignore the effect of a thousand people a day walking on the sidewalk for ten years; "the wear and tear" since 1885, the time of its

construction; nor the fact that the sidewalk would leak, as the witnesses say it was impossible to keep it from leaking; and the effect of the elements, heat, cold, water and frost, upon the iron walk. The nature of its material, its locality and use demanded inspection from time to time such as a reasonably prudent person would make under similar circumstances. Charter of K. C., 1889, art. 3, sec. 1, sub. 5; Ordinances of K. C. 1888, sec. 495; Jegglin v. Roeder, 79 Mo. App. 428; Noyes v. Gordon, 147 Mass. 508; Johnson v. Atchison, 16 Kan. 384; La Salle v. Porterfield, 138 Ill. 118; Wabash v. Southwait, 55 N. W. 818; Bonebroke v. Board of Comrs. of Huntington Co., 141 Ind. 67; Rapho. & West Hempfield Tp. v. Moore, 68 Pa. St. 408; Jones on Neg. of Mun. Cor.,sec. 94, p. 187; Elliott on Roads & Streets, pp. 462, 541.

MARSHALL, J.—Damages for personal injuries received by reason of the giving away of a sidewalk.

The petition alleges that William M. Hall was the owner of premises numbered 818 Walnut Street, in Kansas City, Mo.; that he had caused an areaway to be made in front of said building, under the sidewalk and adjoining the building; that the western four feet of the sidewalk adjoining the building was "constructed of iron plates, set in iron frames and containing small glass lights known as prismatic lights or bulls eye lights." which construction was known to the city; "that said defendants" (the city and Hall) "so carelessly and negligently conducted themselves in reference to said western portion of said sidewalk in front of the entrance to the hallway of said building, that the same on the 6th day of July, 1895, and for a long time prior thereto, was carelessly and negligently suffered to be and remain in a dangerous, defective and unsafe condition; in this, that the flanges, upon which said iron plates rested on said 6th day of July, 1895, and for a long time prior thereto, were carelessly and negligently suffered and permitted to be rusted, cracked and broken, which said defects

were known to all of said defendants, or might, by the exercise
of ordinary care on their part, have been known to them, and
which could not be discovered with due care or caution by
plaintiff; that on the 6th day of July, 1895, while plaintiff
was lawfully and properly standing upon the western portion
of said sidewalk constructed of iron plates set in iron frames
and containing small glass lights as aforesaid in front of the
entrance to the hallway of said building said iron plates upon
which said plaintiff was standing, gave way or fell by reason
of said rusted, cracked and broken flanges, as aforesaid, and
precipitated plaintiff into said areaway."

In consequence of all which plaintiff was injured and for
which he prayed ten thousand dollars damages from both de-
fendants.

The petition contained also a second count based upon
allegations of defective construction of the sidewalk, but upon
the trial the court instructed the jury that there was no evi-
dence to support that count, the plaintiff submitted to the rul-
ing, and therefore it is not now here for consideration.

The answer of the city was a general denial, with a plea
of contributory negligence.

The jury returned a verdict for the defendant Hall, and
against the city and assessed the damages at five thousand
dollars.    After proper steps the city appealed.

The defendant relies, in this court, solely upon the re-
fusal of the court to give an instruction in the nature of a
demurrer to the evidence, which was interposed at the close
of the whole case.    This of course, implies that conceding the
truth of everything the evidence tended to prove, with all the
favorable inferences that may be reasonably and fairly drawn
from it (James v. Ins. Co., 148 Mo. l. c. 15), there is no sub-
stantial testimony to support the verdict. . To determine this
question critical reference to the ultimate facts proved be-
comes necessary.    The defendant Hall excavated the sidewalk
in front of his building to a depth of sixteen feet. He covered

the excavation with stone up to a point within about three and a half feet of his building line. He covered the three and a half foot space with a sidewalk made of iron and glass, which was constructed in this manner: a frame of iron, seven feet in length by three and a half feet in width, was set in, resting on the east side in a groove cut into the stone and on the west side, next to the building, upon an iron girder which ran parallel with the front of the building, and on either end upon cross beams of iron which extended from the stone to the girder and adjoined similarly constructed sidewalks on the north and south of Hall's building. The frame was set in the groove in the stone so as to make the whole sidewalk on the same plane or level. The frame was subdivided, by cross bars or cross ribs of iron, into four plates made of iron, each plate being about 22 by 40 inches. These plates rested upon flanges at the sides of the frame and in the cross bars or cross ribs. These flanges were about an inch and a half wide. The plates had round holes in them about the size of a silver dollar, and these holes were filled in with prismatic lights or bulls eye lights made of glass. The purpose was to secure light from the sidewalk to the cellar of Hall's building.

On the 6th of July, 1895, at about two o'clock, in the afternoon, the plaintiff was standing on this sidewalk, so composed of iron and glass, when suddenly and without warning, the sidewalk gave away and he was precipitated into the areaway below, and seriously injured. The two north plates and the cross beam on which they rested fell in. The cross beam broke off close to the sides of the frame and the flange on the frame next to the building was broken off for about eight inches, commencing at the point where the cross beam joined the frame and extending towards the northwest corner of the frame. The frame and the cross bars or cross ribs were all moulded together. For about a year before the accident, the frame was broken or cracked at the corners, that is, broken clear across the frame at the "mitre," and these breaks could

be seen by anyone standing on the surface of the sidewalk. Hall had had this sidewalk examined about a year before the accident, with a view to stopping leakage, and the cracks had been filled with oakum, pitch and fillet. At that time the men employed by Hall to do this work discovered that a cross beam some ten or twelve feet south of where this accident occurred was broken. This, however, had nothing to do with this accident, for that cross beam and that part of the sidewalk did not give way but is still there, the broken cross beam having been patched up with wrought iron after the accident. The testimony also showed that although the frame was cracked at its four corners it did not fall but on the contrary remained in its place after the accident. It also appeared after the accident that the break in the flange which caused the northern plates to fall was partly an old break.

Over the objection of the city the court permitted the plaintiff to show that similar sidewalks just to the north and south of this sidewalk were out of repair, some of the cross ribs being broken, and also permitted witnesses to testify concerning the condition of this walk who did not see it until two or three weeks after the accident, it being, however, shown by the plaintiff that there had been no change in the condition in the meantime. There is no testimony in the case tending to show that the city had any actual notice of the condition of the sidewalk, but it was shown that the inspector of sidewalks had not inspected this sidewalk for a year prior to the accident, and that it is at one of the most crowded corners of the city were three street car lines converge and hundreds of people pass over it every day. The sidewalk was constructed in 1885, but there is no evidence in the record as to how long such sidewalks usually last, or that they are a dangerous or unsafe construction, or within what time after they are constructed danger may reasonably be expected from the wear and decay of the materials composing it.

The case is therefore reduced to very narrow limits.

Counsel for the plaintiff contend that a proper inspection by the city would have shown the danger in ample time to have repaired the sidewalk and thereby have prevented the accident; that "the break at the corners of the frames," which were visible from the surface, "meant that the flange was broken at the corners, since the flange was but the under part of the frame made so as to receive the plate. The plate (in the north end of the frame) that gave way was adjacent to two of these broken corners. The broken corners not only pointed directly to, but meant a broken flange, the flange and frame being one single piece of iron;" that the broken corners of the frame and flange destroyed the unity of the iron structure, weakened the whole, and cast a greater burden on the disconnected flanges; that an inspection from the surface of the sidewalk would have disclosed the broken corners of the frame, which should, to a reasonably prudent man, have called for a thorough inspection, either by going down into the areaway and looking up or taking a step-ladder and climbing up so as to examine the flanges, or by lifting out the plates that rested on the flanges, and examining the flanges and the whole structure, and that the city was negligent in not so inspecting it, and therefore was guilty of negligence.

On the other hand the city counselor contends that the breaks at the corner of the frame did not impair the strength of the frame nor of the flanges; that the frame and the flanges would be just as safe if they had been made in four parts as they were when made as an unit; that the flanges were part of the frame, and the frame was set in a groove in the stone walk on the east, in the flange on the girder on the west, and in the flanges of the cross-beams at the north and south, and were firmly held in place by the plates which rested on the cross-ribs and that in this manner it was impossible for the frames to get out of place and the carrying capacity of the frames was not taxed to any greater degree than if the whole

had been an unit; that the frames did not in fact give way, but remained in place after the accident, which conclusively proves that the breaks in the corners of the frame had nothing to do with the accident and therefore were not sufficient to put the city to a greater degree of care or to a more minute inspection from below or by lifting out the plates than if no such breaks had been visible from the surface of the sidewalk.

The instructions given for the plaintiff were general in their character and required the jury to find that the flanges were rusted, cracked or broken and that the accident occurred therefrom, and told the jury that it was the duty of the city to keep its sidewalk in a reasonably safe condition for all persons using the same, and that the city was liable if it failed so to do or permitted the flanges to become rusted, cracked or broken, and the plaintiff was injured from such failure, without fault on his part, and also defined negligence and reasonable care. Nothing was said in any of the plaintiff's instructions about the city having actual notice nor about what constitutes constructive notice. The instructions asked by and given for the city were predicated upon the idea that the city is not an insurer of persons using its sidewalks, and that the defects in this sidewalk were hidden or latent defects which could not have been discovered by the city officials even by the exercise of reasonable care. None of the instructions defined to the jury what a hidden or latent defect is. This case therefore is one not only of non-direction, but also of misdirection, and the true law must be applied to the ultimate facts proved, for there is no substantial conflict in the evidence. It is conceded that the city had no actual notice of the defect in the sidewalk. It is not denied that the frame was broken at its four corners for about a year before the accident. It is admitted that the frame remained in its place after the accident, and that the broken cross-rib seen by the repairer about a year before the accident, was ten or

twelve feet south of the place where the accident occurred, and was in no way connected with the frame in question, but remained after this part of the sidewalk fell and in no manner had anything to do with the accident. It is uncontradicted that the city made no inspection of this much-used sidewalk for at least a year before the accident, and that an inspection from the surface would not have disclosed the defect or break in the flange, but that it could only have been discovered by lifting off the plates or by an examination from below by going into the areaway and looking up or climbing up to the flange. The crack or break in the flange is called partly an old break from the appearance it presented after the accident, but there is no evidence whatever as to how long it had existed before the accident. Neither side attempted even to adduce any evidence as to the natural or usual duration or life of a sidewalk like this, nor of how long it would be before the use would destroy its usefulness or make it unsafe. Instruction numbered one given for the plaintiff, authorized a verdict for the plaintiff, if the flange was "rusted, cracked or broken" and if the city "failed to use reasonable care and precaution to keep said portion of said sidewalk in repair," but it did not require the jury to find whether or not the city had actual knowledge of the defect, nor even to find that the defect had existed for such a length of time before the accident that the city could have ascertained the defect by the use of ordinary care.

The law is settled in Missouri, that a city is bound to keep the sidewalks in a reasonably safe condition for public use, and that it is liable for injuries received from defects therein of which it had actual notice or which had existed for such a length of time prior to the accident as by the exercise of ordinary care it could have ascertained, and which it had a reasonable time to remedy. [Roe v. Kansas City, 100 Mo. 190; Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317.] In the Carvin case the plaintiff sued

the city for damages caused by stepping on the top of a water meter, which misplaced it, in consequence of which her foot went into the meter. It appeared that the top was raised from a sixteenth to three quarters of an inch above the level of the sidewalk by reason of dirt having accumulated on the flange of the meter on which the top rested. There was no evidence as to how long this condition existed before the accident, and there was no evidence that the city had actual notice. The defect was not observed by the plaintiff before she stepped on the top of the meter, nor was it calculated to attract attention. It was held; BURGESS, J., delivering the opinion of the court, that under such circumstances negligence could not be imputed to the city, and therefore a judgment in favor of the plaintiff was reversed.

In the Baustian case it appeared that the plaintiff was walking on a plank sidewalk, and when he stepped on the end of a plank it yielded to his weight and caused him to fall and injured him. The sleepers were rotten and the nails were hanging down, but the immediate and proximate cause of the accident was that the ground under the sidewalk had washed out. This condition was not perceptible from the surface, but might have been discovered by an inspection from below. Neither the plaintiff nor the other witnesses who had previously passed along there had noticed it. There was a verdict for the defendant. The circuit court granted a new trial for error in an instruction. It was held, VALLIANT, J., delivering the opinion of the court, that the plaintiff had made out no case, and the judgment granting a new trial was reversed and the cause remanded to the circuit court with directions to overrule the motion for a new trial, notwithstanding the error in the instruction. In both of these cases an inspection such as the plaintiff here contends was necessary would have disclosed the defect, but no such inspection was made, yet it was held that the plaintiff was not entitled to recover.

If all that plaintiff contends for, that the city must use

reasonable care as to inspection and must take notice of the usual and natural wear and decay of the materials composing a sidewalk be conceded, still there is in this case a complete lack of facts or evidence to which such rules of law could be applied, for it nowhere appears that ten years is the usual or natural life or period of duration or safety of sidewalks like this, nor within what period of time danger is to be apprehended from wear and decay. In the absence of such a showing it can not be said as a matter of law that the city was guilty of negligence when there were no facts proved which showed negligence and no circumstances in the case from which negligence could be fairly implied. Neither can it be declared as a matter of law, nor in the absence of a showing could the jury be allowed to find the fact to be, that cracks on the corners of the frame so increased the strain upon the flanges or cross-ribs as to impair their strength, nor that such cracks imparted notice to the city of threatened danger and therefore called for close inspection in the manner indicated. The defects in the flanges were not patent or obvious. The plaintiff saw no danger in stepping on the sidewalk. Hundreds and thousands of other men passed over the sidewalk daily, yet none saw anything to deter them or to put a man of ordinary prudence on his guard. The city was only bound to use such care as a person of ordinary prudence would have used under similar circumstances. It may be as the plaintiff contends that the cracks at the corner of the frames weakened or increased the strain on the flanges or cross-ribs, but no witness has so testified in this case, and that position lies altogether in argument here in the present state of the record. So, following and approving the Carvin and Baustian cases, it must be held in this case that the plaintiff failed to make out a case of negligence against the city. The first instruction given for the plaintiff must also be held to be erroneous in not requiring the jury to find that the city had actual notice of the defect in the sidewalk or that it was of such character

that the city by the exercise of ordinary care should have discovered it in time to have remedied it before the accident occurred. The error in this instruction was not cured by any other instruction given. Under this instruction the jury were warranted in finding a verdict against the city even if it had no actual or constructive notice, and even if the defect had existed too short a time before the accident for the city to have discovered it and remedied it.

For these reasons the judgment of the circuit court is reversed and the cause remanded. All concur, except *Robinson, J.*, absent.