ANSON E. BUCKLEY, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, June 2, 1902.

1. **Municipal Corporations:** CONDITION OF SIDEWALKS: NEGLIGENCE: NOTICE. The sidewalk must be kept in reasonably safe condition for public use or the city will be liable for injuries resulting from defects of which it had actual notice or could have known by reasonable care.

2. ———: ———: ———: ———: A city must be presumed to know every fact in respect to the sidewalks that by the exercise of reasonable care it could have discovered, and defects are not latent if discoverable by reasonable diligence.

3. ———: ———: ———: DEMURRER TO EVIDENCE. On a demurrer to the evidence, plaintiff is entitled to every fair and reasonable inference from the evidence produced, as well as the full benefit of all positive facts elicited by him; and on a review of the evidence it is held a peremptory instruction was properly refused.

4. ———: ———: EVIDENCE: CONDITIONS ADJOINING THE PLACE OF ACCIDENT. Plaintiff fell through an iron and glass framework covering an area under the sidewalk. *Held*, it was not error to admit evidence of the condition of the frames adjoining on either side, which were put in of the same material and about the same time.

5. ———: ———: EXPERT WITNESS: OPINION. On the trial of such question, it is not error to permit an expert to give his opinion as to the effect of certain brakes in the frame.

6. ———: ———: NOTICE: INSTRUCTION. An instruction relating to certain brakes in the corners of the iron frame that gave way, is held properly refused.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates*, Judge

AFFIRMED.

*L. A. Laughlin* for appellant.

(1) The court erred in refusing the peremptory instruction to find for the defendant at the close of the evidence. 156 Mo. 27. (2) The court erred in admitting evidence of the condition of the frames north and south of the one in controversy. Kuntsch v. New Haven, 83 Mo. App. 174; Weinberg v. Appleton, 26 Wis. 56-58. (3) The court erred in admitting the anwer to the hypothetical question asked Mr. Hedrick by the plaintiff. Benjamin v. Railway, 50 Mo. App. 602; Mammerberg v. Railway, 62 Mo. App. 563; Senn v. Railroad, 108 Mo. 142; Turner v. Haar, 114 Mo. 335. (4) The court erred in permitting the witness Hedrick to give his opinion as to whether the walk was in a reasonably safe condition at the time of the accident. District of Columbia v. Haller, 4 App. D. C. 405; Holton v. Hicks, 58 P. (Kan.) 998; Eubank v. Edina, 88 Mo. 650; Monahan v. Clay and Coal Co., 58 Mo. App. 68; People v. Plank Road Co., 125 Mich. 366; Girard v. Kalamazoo, 92 Mich. 610; See also Pyle v. Pyle, 158

Ill. 289; Myers v. Lockwood, 85 Ill. App. 251. (5) The court erred in refusing defendant's instruction number 10.

*Warner, Dean, McLeod & Holden,* and *James G. Smart* for respondent.

(1) Three reputable experts, introduced by plaintiff, supported by two witnesses for the defendant, have indisputably shown that the breaks in the corners of the frame threw such additional strain upon the flange at the point where the crossbar joined the frame that the walk was materially weakened and rendered thereby unsafe and dangerous. Buckley v. Kansas City, 156 Mo. 27. (2) In the inquiry whether plaintiff has a case to go to the jury, he is entitled to every fair and reasonable inference from the evidence he has produced, as well as to the full benefit of all the positive facts he has elicited. James v. Life Assn., 148 Mo. 15; Baldwin v. City of Springfield, 141 Mo. 205; Young v. Webb City, 51 S. W. 709; Buesching v. Gas Light Co., 73 Mo. 231. (3) Knowledge of the construction of this walk which was imputed to the city, as a matter of law, and actual or constructive knowledge of the broken corners of the frame, put the city upon inquiry and reasonable care and prudence demanded at least an inspection. Russell v. Columbia, 74 Mo. 480; Jegglin v. Roeder, 79 Mo. App. 428; Haniford v. Kansas City, 103 Mo. 172; Young v. Webb City, 51 S. W. 709; Carrington v. St. Louis, 89 Mo. 208; Squires v. Chillicothe, 89 Mo. 226; Maus v. Springfield, 101 Mo. 613; Benjamin v. Railway, 133 Mo. 274; Bonine v. City of Richmond, 75 Mo. 437; Jegglin v. Roeder, 79 Mo. App. 428; Village of Rockport v. Richarts, 81 Ill. App. 533; Snyder v. City of Albion, 113 Mich. 275; Riley v. Iowa Falls, 83 Ill. 761. (5) If the duty of the city is measured by the standard of reasonable care, and anything short of reasonable care is negligent, then it fol-

lows that defects are not hidden or latent if they are discoverable by the exercise of reasonable care. City of La Salle v. Porterfield, 138 Ill. 114; Vanderslice v. City of Phila., 103 Pa. St. 102; Wills v. Vilage of Mendon, 108 Mich. 251; Village of Fairbury v. Rogers, 98 Ill. 554. (6) Complaint is made that the court erred in admitting testimony as to defects in the walk other than the defects that caused the injury. Kuntsch v. City of New Haven, 83 Mo. App. 174; Sidekum v. Railroad, 93 Mo. 400, 405; Smallwood v. City of Tipton, 63 Mo. App. 234; Snyder v. City of Albion, 113 Mich. 275; Wills v. Village of Mendon, 108 Mich. 251; Haynes v. City of Hillsdale, 113 Mich. 44; Show v. Village of Sun Prairie, 74 Wis. 108; Chacy v. City of Fargo, 5 N. D. 173; Lyons v. City of Red Wing, 78 N. W. 868; Riley v. Town of Iowa Falls, 83 Iowa 761; Ledgerwood v. City of Webster, 61 N. W. 1089; Bailey v. City of Centerville, 93 Iowa 726; City of Shelby v. Brank, 61 Ill. App. 153; Noyes v. Gardner, 147 Mass. 505. (7) There was no error in permitting the expert witness Hedrick to testify that at the time of the accident the walk was not safe for the uses to which it was put, because of the four broken corners of the frame. Benjamin v. Railway, 50 Mo. App. 602; Cobb v. Railway, 149 Mo. 609; Helfenstein v. Medart, 136 Mo. 595; Hurst v. Railway, 163 Mo. 309; Boettger v. Iron Co., 124 Mo. 87; Turner v. Haar, 114 Mo. 335; O'Rourke v. Railway, 142 Mo. 342; Badgley v. St. Louis, 149 Mo. 122.

SMITH, P. J.—This is an action to recover damages, the constitutive facts of which are alleged in the petition to be that one William M. Hall was the owner of the premises numbered 818 Walnut street in Kansas City; that he had caused an areaway to be excavated under the sidewalk adjoining said building in front; that the four feet of the sidewalk adjoining the building was constructed of iron plates set in iron frames and

containing small glass lights, known as prismatic lights or "bull's eyes," which construction was known to the defendant; that the defendant so carelessly and negligently conducted itself in reference to said portion of said sidewalk that the same on the sixth day of July, 1895, and for a long time prior thereto, was carelessly and negligently suffered to remain in a dangerous, defective and unsafe condition in this: that the flanges upon which said iron plates rested on said sixth day of July, 1895, and for a long time prior thereto, were carelessly and negligently suffered and permitted to be rusted, cracked and broken, which said defects were known to the said defendant or might by the exercise of ordinary care on its part have been known to it, and which could not be discovered with due care by plaintiff; that on said day and year while lawfully standing upon the portion of said sidewalk constructed as aforesaid of iron plates set in iron frames and containing small glass lights, said iron plates gave way and fell by reason of the said rusted, cracked and broken flanges, and precipitated plaintiff into said areaway, etc.

The answer contained a general denial with which was united the plea of contributory negligence.

The main facts, as disclosed by the evidence and about which there is very little dispute, are that Mr. Hall excavated the sidewalk in front of his building to the depth of sixteen feet; that he covered the excavation with stone up to about three and a half feet of the building line and the intervening three feet and a half space he covered with a sidewalk made of iron and glass constructed in this manner: a frame of iron seven feet long by three and a half wide was set in the sidewalk resting on the east side in a groove cut in the stone composing the balance of the walk and on the west side, next to the building, upon an iron girder running parallel with the front of the building. The entire sidewalk in front of the building was constructed in this

manner, the frames resting in the groove in the stone so as to make the whole sidewalk level. The frame in question here was subdivided by crossbars of iron into four plates forty inches long by twenty-two wide, and resting upon flanges at the sides of the frames and crossbars about an inch and a half wide. These plates were made of iron and had round holes in them in which were fitted prismatic lights made of glass.

At the time stated in the petition the plaintiff was standing on the sidewalk so constructed as aforesaid, when suddenly and without warning it gave way, whereby he was precipitated into the areaway below and seriously injured, the two north plates and the crossbar on which they in part rested falling in. The latter broke off close to the sides of the frame, and the flange on the frame next to the building broke off for about eight inches commencing at the point where the crossbar joined the frame and extending towards the northwest corner of the frame. As originally constructed the frame and crossbars were all moulded together.

About a year before the happening of the injury complained of here, the frame was cracked clear across the corners at the "miter joints" and these cracks could be seen by any one while standing on the sidewalk. About that time Mr. Hall had the sidewalk examined and had stopped the cracks in the frame with oakum and pitch to prevent leakage and it was then discovered, by those doing the work, that a crossbar, ten or twelve feet south of the place where the accident happened, was broken... This had no connection with the break causing the injury, for that crossbar and that part of the sidewalk did not give way. This crossbar was allowed to remain in its broken state until after the injury, when it was patched up with wrought iron. The frame, though cracked at the four corners, as already stated, did not fall at

the time of the plaintiff's accident, but it was dis-
covered after the injury that the break in the flange
which caused the plates to fall, was partly an old one.

There was no evidence tending to show that the
defendant had actual notice of the cracked or broken
conditions of the flanges on which the plates rested.
The defendant's sidewalk inspector had not, for at
least a year before the accident, inspected the side-
walk along there. It is in effect conceded that an in-
spection from the surface of the sidewalk would not
have disclosed the crack or break in the flange, but
that it could have been discovered by lifting the plates
or by an examination made from the areaway below.

There has been two trials and in each of which
the plaintiff had judgment. The first case was taken
by defendant to the Supreme Court where the judg-
ment was reversed and cause remanded. The judg-
ment on the second trial being for only three thousand
dollars, we have cognizance of the appeal therefrom.
In looking at the report of the first case (156 Mo. 16)
in connection with the record in this and we find the
two cases to be the same except in the particulars
presently to be noticed. In the former appeal, the
court in reviewing it says: ''The crack or break in the
flange is called partly an old break from the appear-
ance it presented after the accident, but there is no
evidence whatever as to how long it had existed before
the accident. . . . Instruction numbered one given
for plaintiff authorized a verdict for him if the flange
was rusted, cracked or broken,'' and if the defendant
''failed to use reasonable care and precaution to keep
said portion of said sidewalk in repair, but it did not
require the jury to find whether or not the city had
actual knowledge of the defect, nor even to find that
the defect had existed for such a length of time before
the accident that the city could have ascertained the
defect by the use of ordinary care.'' It is clear that
but for these two defects in the case the judgment

would have been affirmed. The question now is, whether these defects were supplied or cured at the second trial.

Turning again to the evidence and we find that the frame, on the flanges of which the plate that fell had rested, was cracked clear across its four corners, and as the flanges were a part of it they, too, were cracked to the same extent. These cracks were each of the length of four inches, and the four corners of that north and that south of it were in the same cracked condition so that there was forty-eight inches or four feet of cracks or breaks that were plainly observable from the surface of the street. And it was shown by the uncontradicted evidence that this condition had existed for more than a year prior to the accident.

It is the well-settled law of this State that a city is bound to keep its sidewalks in a reasonably safe condition for public use and that it is liable for injuries received from defects therein of which it had actual notice or which had existed for such length of time prior to the accident as by the exercise of ordinary care it could have ascertained and which it had reasonable time to remedy. Roe v. Kansas City, 100 Mo. 190; Carvin v. St. Louis, 151 Mo. 334; Baustain v. Young, 152 Mo. 317; Buckley v. Kansas City, 156 Mo. 16. According to this rule we think the evidence was prima facie sufficient to support this part of the plaintiff's case. Where, as here, the uncontradicted evidence shows that a defect in a sidewalk, like that shown in this case, has been for more than a year previous to the accident plainly visible from the surface of the sidewalk, a jury would be fully justified in imputing notice of such defect to the city. After such a length of time, ignorance of the existence of such a defect would be inexcusable.

Notice of the cracks in the frames, which latter were a part of the sidewalk, was clearly imputable to the defendant and was amply sufficient to put it upon

inquiry. If it had exercised reasonable care after such notice, it would have discovered the areaway or room beneath the sidewalk and how the same was constructed; that the framework rested on the east side upon an inch and a quarter groove cut in the stone and on the west side upon a cast-iron lip an inch and a quarter wide, without any other support; that the ends of the frame were supported only on their pointed ends with a bearing on each of an inch and a quarter; that the crossbar was only three-eighths of an inch thick where joined to the frame; that there was an old rusty crack some fifteen inches long in the flange upon which the west edge of the plate that gave way rested, and also the broken crossbar. And for the purposes of this action, defendant must be presumed to have known every fact in respect to the condition of the pavement that by the exercise of reasonable care it could have discovered. Young v. Webb, 150 Mo. 333; Carrington v. St. Louis, 89 Mo. 208-213; Squires v. Chillicothe, 89 Mo. 226-232; Maus v. Springfield, 101 Mo. 613-617; Benjamin v. Railway, 133 Mo. 274; Bonine v. Richmond, 75 Mo. 437; Jegglin v. Roeder, 79 Mo. App. 428; Russell v. Columbia, 74 Mo. 480; Haniford v. Kansas City, 103 Mo. 172; Lockport v. Richarts, 81 Ill. App. 533-536; Snyder v. City Albion, 113 Mich. 275-280; Riley v. Iowa Falls, 83 Ill. 761. Defects are not latent if they are discoverable by the exercise of reasonable diligence. City v. Porterfield, 138 Ill. 114; Vanderslice v. Phila., 103 Pa. St. 102; Will v. Village Mendon, 108 Mich. 251. The concurrent and undisputed testimony of several experts was that the breaks in the corners of the frame cast such additional strain upon the flange at the point where the crossbar joined the sides of the frame, as to materially weaken the sidewalk.

G. E. Rider, twenty years a pattern-maker and designer in iron structural work, and whose duties required him to figure on the strength of metal, testified

that the corners of the frame being broken an additional strain was relegated to the ends of the crossbars: "Q. . . . As I understand you, when this is solid and not broken, the strain is distributed on those sides and upon these (indicating)? A. Equally ought to be; yes, sir. Q. Equally, and when the corners are broken, the strain then is thrown upon these cross-ribs? A. It must, necessarily, get some support because this was weakened and no longer acts as a—across in that direction. . . . Q. But when they are cracked through the corners here, that strain is taken off, as I understand you to say, from the end of those frames? A. I think it would be. Q. Now, what makes you think so? A. Because I don't think this would be fastened securely here by any other means, and being broken at that part, it becomes detached and forms no part of the whole frame, so its strength is lost to it. If it had been on a railroad bar, as you suggested across here, it would have to be a well-secured bar—secured strong enough to prevent it tipping up in that way and releasing the strain on the bar at this particular part and consequently throwing it onto that (indicating)." As to whether the end piece, after the breaks at the corners, would tilt or change their position, this witness said: "Not necessarily, because this being rigid here, and this still holding here, holding the plate up level, and the strain being relieved from this, it would cause the bearing less on this, but not necessarily change its position.

Ira G. Hedrick, a civil engineer and especially engaged in structural steel work and bridge building, testified that he was a graduate in the civil engineering department of the University of Arkansas and of Magill University at Montreal, Canada; that his firm did the structural steel work for the Convention Hall of Kansas City; that they had built three bridges over the Missouri river and other bridges, and had otherwise a large experience in this line of work. Being

asked what effect the breaks at the corner of the frame
would have on the strength of the walk he said: "I
should say that the corners being broken would mater-
ially weaken the sidewalk. Q. In your judgment,
about how much would it weaken that sidewalk? A.
Well, it would be less than half as strong as it would
be with those in there. . . . The stone only ap-
proaches about an inch and a half, forming a support
for this outside frame, while the load upon the plate
is applied on the edge of this flange; with these cor-
ners intact, there is a resistance to the bending move-
ment which you will notice when this takes place,
which tends to twist that. If these corners are intact.
Q. That is, twist the flange? A. To twist the flange;
it tends to depress that flange; the load being resisted
by this support; if this support was directly under the
plate which supports the walk being broken at the cor-
ner, would not reduce the strength of the frame, but
as to the support back here (indicating), it does not
reduce it, and the only thing that keeps this from rotat-
ing are these small crossbars which come up and catch
onto that flange. Now the small shoulder of metal
there was not sufficient to resist this tortional motion,
or this twisting effect which evidently caused the
break in the frame here . . . Q. Now, Mr.
Hedrick, I will ask you to state whether, in your judg-
ment, that walk was a safe walk for the uses to which
it was there put, assuming these corners were bro-
ken? A. I should say it was unsafe."

Orange J. Hill testified that he had never known
of "crossbars or portions of the flange around where
the crossbars joined the frame, to be broken without
any breaks in the corners of the iron frame.

H. F. Mitchell, a witness for the city, a pattern
maker of the Riverside foundry, testified that the
breaks at the corners would weaken it, also, that the
breaks at the corners threw an additional stress upon
the crossbars, that they would give it (crossbar) less

resisting power and would necessarily weaken it. "Q. And when that is broken across there (corner) it necessarily breaks the. flange at the corners, doesn't it? A. Yes, clear through." Mr. Mitchell further said that he had never known of a case where cracks had appeared in the flanges around the crossbar, where it connects with the frame and there were no cracks in the corners.

It thus appears that the broken corners unquestionably weakened the flange upon which rested the plates that fell. What was the proximate cause of the collapse of the pavement and consequent injury of the plaintiff? It is true, there was disclosed by the collapse a rusty crack in the flange where it gave way, but as to when this was made it did not appear. It may be inferred that, as the strain on the flange caused by its vertical load was about equal everywhere, the crack was caused by the breaking of the corners of the frame which increased the strain at that point, as was shown by the opinion of the experts. When the frame, its size, dimensions, construction, its material, how placed, its bearings, vertical load and supports, was described to the experts, illustrated by models, drawings, etc., they gave it as their unanimous opinion that the breakage in the corners of the frame "relegated" the strain to the point where the break occurred in the crossbar and flange, and the consequent collapse of the pavement. The evidence tended to prove that the cracks in the corners of the frames extended through the flanges at that point. These cracks were none the less cracks because at the corners of the frames than because at and near where the crossbar joined the frame, and it will not, therefore, do to say that such evidence contradicts the allegations of the petition and for that reason is incompetent. Under the rule applicable where a court is required to determine whether or not a prima facie case has been made out, the plaintiff is entitled to every fair and reasonable inference

from the evidence he has produced, as well as to the full benefit of all positive facts elicited by him. James v. Life Ass'n, 148 Mo. loc. cit. 15; Baldwin v. Springfield, 141 Mo. 205. And accordingly we do not think the court erred in refusing the defendant's peremptory instruction.

The defendant contends that the court erred in permitting the plaintiff to introduce evidence tending to prove the condition of the frames in front of the Hall building north and south of the one in question here. The evidence disclosed that the six frames in front of said building were all just exactly alike and were put in by the same mechanic. They were of the same material and construction, had a like support and formed but one structure. Under the numerous authorities cited in plaintiff's brief, this evidence, we think, was clearly admissible. It is true, that one of the other frames referred to in the evidence was put in two or three years later than the one which fell, but considering the durability of the materials out of which they were all constructed, we do not think this difference in time was such as to require the exclusion of the evidence touching their condition. Kuntsch v. New Haven, 83 Mo. App. 174, and other cases cited by plaintiff.

Nor do we discover any error in the action of the court in permitting the expert witness (Hedrick) to answer the hypothetical question asked him by the plaintiff by which it was sought to elicit from him his opinion as to what effect the breaks in the corners of the frames would have on the carrying strength of the sidewalk. This question was proper under the ruling in Buckley v. Kansas City, 156 Mo. loc. cit. 25, and Hurst v. Railway, 163 Mo. loc. cit. 321. The question embraced every material fact that had been, up to that time, proved, unless it was that the cracks in the flange where the crossbar joined the frame did not extend within several inches of the corner of the frame, which

latter fact was immaterial and not required to be stated for the purpose of the inquiry. The assumptions, as far as we can understand, were within the probable range of the evidence and for that reason not objectionable. Powers v. Kansas City, 56 Mo. App. loc. cit. 577.

The court, by elaborate instructions, submitted every conceivable phase of the case presented by the pleadings and evidence, and no complaint is made of the action of the court in that regard except that defendant insists that its instruction number ten should have been given. It told the jury "that though it may find and believe from the evidence that by reason of the character of the corners of the iron frame an additional strain was placed upon the crossbars, still if it found that such fact was not generally known to persons of ordinary intelligence and prudence, then its verdict must be for the defendant city. It contains an incorrect expression of the law and was rightly refused. There was no such issue in the case as it submitted. Had it told the jury that if it found that the additional strain cast upon the crossbars by reason of the breakage in the corners of the frames, was a fact, though proved that it could not have been discovered by the defendant or its street and sidewalk inspector by the exercise of reasonable care, it would have been less objectionable.

The judgment, we think, is for the right party and it will accordingly be affirmed. All concur.