KATHERINE O'GORMAN, RESPONDENT, v. KANSAS CITY, Mo., APPELLANT.—93 S. W. (2d) 1132.

Kansas City Court of Appeals. April 6, 1936.

*Cope & Hadsell* and *Roy W. Rucker* for respondent.

*Marcy K. Brown, Jr.,* and *Francis L. Roach* for appellant.

REYNOLDS, J.—This is an action for personal injuries by Katherine O'Gorman, who was at the time of the institution of this suit a minor, through her mother, Maude O'Gorman, as next friend, arising from an accident on July 28, 1933, when she stepped on a catch-basin cover located in the sidewalk at the southeast corner of Fifty-ninth and Main Streets in Kansas City, Missouri. Since the institution of the suit, she has reached her majority. From an adverse judgment in her favor, in the sum of $3500, the defendant appeals.

The negligence alleged is that, on July 28, 1933, and for a long time prior thereto, the defendant city negligently and carelessly permitted the cover or lid to the catch-basin or manhole, upon which plaintiff stepped, to become worn, loose, ill-fitting, too small, slick, and slippery, so that upon pressure or under tread it would slide, tilt, give way, and slip from its setting, thereby rendering it dangerous to pedestrians and negligently and carelessly permitting it to remain in such condition for a sufficient length of time prior to the accident that it could, in the exercise of ordinary care, have discovered such dangerous condition and have replaced or repaired it prior to the accident and that it negligently failed to warn plaintiff by any sign or otherwise of the dangerous and defective condition of such cover.

The answer of the defendant is a general denial.

Upon a trial before a jury, the defendant, at the close of the plaintiff's evidence and again at the close of the whole evidence, requested instructions in the nature of demurrers to the evidence directing a verdict for the defendant, which requested instructions were by the court refused. The cause being submitted to the jury, the jury returned a verdict for the plaintiff in the sum of $3500, upon which verdict the judgment noted herein as having been appealed from was entered. After unsuccessful motions for new trial and in arrest of judgment, the defendant prosecutes this appeal.

There is evidence in the record tending to show that, at the time of the trial, the plaintiff was twenty-one years of age and, at such time, resided in Tulsa, Oklahoma; that, on July 28, 1933, she was living at 417 West 67th Street, Kansas City, Missouri; that, on said date, she was riding in a car driven by one Miss Banks and stopped at the Crown Drug Store at Fifty-ninth and Main Streets, at the corner where the catch-basin in question is maintained by defendant; that she alighted from the car and went into the drug store; that, when she came out of the drug store, she approached the car on the side next to the catch-basin or manhole and, while going to the car, stepped on the cover over the catch-basin or manhole with her right foot and, as she started to bring her left foot up, the cover tilted and shoved entirely away from the manhole or catch-basin and let her fall into the manhole to her hips, skinning her right leg

and ankle and twisting the upper part of her leg as she went down; that her back was wrenched and scratched, and blood was running from bruises on her right leg when she got up, and she had a sick feeling; that the wounds were bandaged, and she went to a sororiety meeting where she remained about forty-five minutes and left by reason of becoming sick from her injuries; that she was taken home by friends; that she was confined to her bed for several weeks under the care of physicians; that she suffered much pain and still suffered at the time of the trial; that she sustained permanent injuries of a serious character; that the accident happened about 1:45 P. M.; and that the day was bright and sunshiny. She testified that, at the time she stepped on the catch-basin or manhole, she was paying attention to where she was walking but was not giving any attention to the catch-basin or manhole.

There was evidence tending to show that the catch-basin or manhole cover did not fit closely; that it had a play of one-half to three-quarters of an inch on the surface upon which it rested in which to slide back and forth; that the flange upon which it rested was much narrower on one side than on the other; that, when stepped upon, the cover would tilt and slide completely off of the manhole; that the rim or flange had become rusted and corroded and had practically worn away.

The evidence was conflicting as to surface conditions and appearances. There was evidence elicited by defendant tending to show that the cover lay level on the steel·plate upon which it rested and that the top of it was flush with the adjacent sidewalk which was level and had an even surface and that there was nothing to indicate, by merely looking at it, that it was defective and dangerous or that anything was wrong with it. There was also evidence to the contrary—that it did not appear to fit; that it was loose and too small and had too much play; that it wobbled; and that it did not look right and did not appear to be secure. This latter condition was testified to by witnesses, some of whom had observed it over a period of four years and more. There was evidence to the effect that, when the cover was on, it was not apparent to any one that the flange had rusted; that, in cases where a cover slips, something is wrong; that the manhole had been in use for several years (just how long, however, does not appear); and that it had never been repaired. There was evidence by the defendant to the effect that the lid was tight-fitting and not too loose and that it did not tilt when properly placed.

The evidence tends to show that the corner at which this manhole or catch-basin was located was a particularly busy corner, over which many people passed during the day, and that the city had employed inspectors whose duty it was to make frequent inspections of man-

hole covers at such corners to ascertain their conditions and also to see whether they were loose or rusty. There was no evidence that the cover on the manhole had ever been repaired or that, prior to plaintiff's injury, any complaint had ever been made to the defendant city concerning its condition.

There is no question raised on this appeal as to the excessiveness of the verdict; and it is, therefore, unnecessary to set out the evidence regarding the nature, extent, and character of the plaintiff's injuries more fully than has been done, other than to say that the evidence in the record sufficiently supports the allegations of the petition as to such injuries.

## OPINION.

1. The defendant complains of the refusal of the demurrers requested by it.

Its sole contention under said complaint appears to be that the defect in the catch-basin cover was a latent defect and that there is no evidence of any notice to the defendant city, actual or constructive, of the existence of such defect and that therefore its demurrers should have been granted.

It is true as contended by defendant that the rule in this State is that, before the city may be held liable for damages on account of an injury sustained by a pedestrian on a sidewalk on its streets by reason of a defective and unsafe condition in such walk, the plaintiff must show actual knowledge of such defective and unsafe condition on the part of the city or show there existed for a sufficient length of time before the accident such a state of facts as to justify the inference that the city should have, in the exercise of ordinary care, ascertained the existence of such defective condition and have known that the walk, by reason of such defective condition, was unsafe and dangerous and, in the exercise of ordinary care, could have remedied it. [Carvin v. St. Louis, 151 Mo. 344, 52 S. W. 210; Baustian v. Young, 152 Mo. 317, 53 S. W. 921; Buckley v. Kansas City, 156 Mo. 16, 56 S. W. 319; Fehlhauer v. St. Louis, 178 Mo. 635, 77 S. W. 843.]

However, in this case, it is denied by plaintiff that the defects in the catch-basin and the cover on the manhole were latent or hidden. She contends that conditions existed which were open and obvious to ordinary inspection and observation from which the existence of such defects might have been known and that such conditions existed for such a length of time prior to the plaintiff's injury not only for the defendant, in the exercise of ordinary care, to have known of such defective conditions but to have remedied the same and have prevented injury to plaintiff.

There was evidence tending to show that the manhole cover was

too small and would not fit into the groove in which it was intended to be fixed and that it was loose and had play upon the shoulder or flange on the inside of the manhole frame upon which it rested and on which it was supposed to fit. This condition was apparent and had been noticed by witnesses, some of whom for a number of years had been accustomed to pass over or near it. One witness, who had lived in the neighborhood for years, testified that she had frequently passed the catch-basin but had never walked directly over the cover on it; that "it did not look right" to her, and she had "always sidestepped it;" that the cover was old and rusty; that she was present when the plaintiff was injured and noticed the cover slip and slide off to one side when plaintiff stepped on it; that she kicked it back on; that it was too small and did not fit; that it had play upon the flange on which it was supposed to fit from one-half to three-quarters of an inch; and that, while the cover was off, she noticed that the flange on which it rested was rusty and old. Another witness testified that she lived in the neighborhood where the accident occurred and had been going to the Crown Drug Store at the corner where the manhole was regularly for six or seven years and had walked over the sidewalk where the accident occurred many times and that she always avoided stepping on the catch-basin because the top "looked loose." She was present at the time of plaintiff's injuries, saw her step on the manhole cover, and saw it slide to the side and let plaintiff fall. While the top was off, she noticed that the rim on which it rested was rusty and worn. When the cover was put back, it had quite a bit of space in which to play and did not appear to be secure. Another witness testified that she was present at the time of plaintiff's injuries; that she noticed the condition of the rim and flange upon which the manhole cover rested after it slipped off the manhole; that it was rusty and appeared to be corroded; and that, when the cover was placed back, it did not fit into its frame but appeared to be too small and wobbled. She had passed the catch-basin for a period of four years and over before plaintiff's injury and had noticed that the cover, during that time, did not seem to fit but appeared to be a little loose. There was evidence that the corner where the manhole was maintained by the city (where plaintiff was injured) was a busy corner and that a great many people passed there. It appears from the testimony of one of the defendant's witnesses that, at times, manhole covers and the rims or flanges on which they rest become rusty and get loose and are replaced with new ones. It appears from the testimony of another of defendant's witnesses that sometimes it takes a great deal of twisting to get a manhole cover off and that, where one just slips off, there is something wrong.

It is true that no witness testified to seeing any one step on this

particular cover and it slide from under him prior to the time that plaintiff stepped on it and that there is no testimony by any witness that he ever saw it wobble until it was placed back on the manhole after plaintiff's injury; and it is true that there is no testimony that any one ever saw that the rim or flange on which it rested and into which it was supposed to fit was rusty, corroded, and worn until the time of plaintiff's injury, when the cover slipped off. However, that it was too small and did not fit and that it had not looked right for a period covering several years prior to plaintiff's injury were facts testified to by one or more witnesses who had, during such period of time, observed such conditions.

2. If a condition of the kind disclosed by the testimony of the witnesses existed for the period of time indicated by their testimony at such a heavily travelled corner as that at which the catch-basin or manhole was located, then the conclusion that the defendant city in the exercise of ordinary care should have known of it and remedied it is justified.

Not only so, but the record shows that the defendant city recognized the likelihood of a defective condition arising in both the covers and the rims or flanges upon which they rest and of one or the other or both rusting and had inspectors whose duty it was to inspect the manholes and covers and, when found rusty, to remedy such condition by replacements or otherwise. It does not follow from the fact that the rim or flange on which the manhole cover rested in this case was rusty and corroded at the time of plaintiff's accident and injury that it just became so, at such time. Common knowledge is to the contrary. If timely attention had been given the cover in this case, the reason for its looseness and play would have been discovered and remedied. While the rusted condition of the flange and the fact that it had become worn might not have been visible, yet the existence of such condition might readily have been known from the looseness of the cover and its failure to fit properly and from the excessive play that it had.

It is testified by a witness for the defendant city (who had in charge for it the care of its sewers and their repair) that the defendant city would not use a manhole cover so loose as to have a play of one-half inch. It is obvious that the reason it would not do so is because a cover with that play would be liable to slip when stepped upon and prove unsafe and dangerous to those stepping upon it. It is apparent that such a cover would be more liable to slip and slide and be misplaced when stepped upon than one which fitted more closely and had less play. It was further testified by such witness that, if a cover slipped off, it would indicate that there was something wrong.

In the case of Bayne v. Kansas City (Mo. App.), 263 S. W. 450, a similar situation existed to that in this case. In that case, plain-

tiff sought to recover for an injury resulting from a fall caused by stepping on the cover over the catch-basin in the sidewalk which tilted and slipped when he stepped on it, letting his foot into the manhole, whereby he fell to the ground and his leg was broken. He alleged in his petition that Kansas City, as a part of its sewer system, maintained a manhole in the sidewalk at the much-travelled corner of Seventeenth Street and Grand Avenue, which manhole was covered by an iron lid; that, while walking at said corner, he stepped on said lid and, " 'by reason of the lid and covering becoming worn, loose, and ill-fitting, and dirt and debris gathering thereunder—it tipped or tilted and moved under his tread, and plaintiff was thrown or caused to fall, and was seriously injured.' " It was further alleged that the defendant's negligence " 'consisted in this, to-wit, that the manhole cover—set out was located at one of the most busy thoroughfares in Kansas City, Missouri; that they (defendant) carelessly and negligently allowed and permitted said manhole or the lid thereto to become loose and ill-fitting; that they (defendant) allowed an accumulation of dirt to gather thereunder, causing the manhole cover to become loose and ill-fitting and causing it to become unsafe and dangerous to pedestrians walking thereon, and as a result of that condition the said cover or lid would teeter and totter or shake up and down and become loose and ill-fitting, and that condition remained at said place for a sufficient length of time that the defendant, by the exercise of care and caution could or should have discovered said condition and remedied the dangerous condition and thereby averted the injury to this plaintiff, but carelessly and negligently failed to do so, and as a direct result thereof plaintiff was thrown down and injured.' "

In that case there was evidence by plaintiff that for four or six years he had been collecting mail from boxes throughout the territory covering the point in question and that, in doing so, he had frequent occasion to pass over the manhole at the corner and he had "occasionally" stepped on the cover thereof and he "noticed once in a while that it was kind of shaky" and that it was "shaky, wobbly—loose." He was not looking directly or intently at the manhole cover as he walked over it on the occasion of his fall; but it was apparently in place; and he stepped on it, whereupon it tilted, slipped, and threw him down. He could not say definitely when it was that he first noticed the loose and wobbly condition of the cover, but it was three or four months or more before his accident. In passing upon the sufficiency of the evidence, Judge TRIMBLE, speaking for the court, said at page 453 of 263 S. W., *supra*, "We think that if the cover was in the condition plaintiff says it was for the length of time specified by him, then the jury could find that the city, in the exercise of ordinary care, should have known it and reme-

died the situation. It cannot be conclusively said that, if the cover over an opening in the sidewalk at such a heavily traveled corner becomes loose and wobbly when stepped upon, this condition would not be observable, and that the liability of such a loose and wobbly cover to slip slightly and tilt, letting a foot and leg into the opening, would not be anticipated as likely to happen any moment. Although dirt in the flange might not be visible (as to which the evidence is silent), yet its presence might readily be known from the looseness and failure of the lid to fit. From all which we reach the conclusion that it cannot be said that conclusively the cover was not in a dangerous condition, or, if it was, that the defect was a hidden one and the city could not be charged with constructive notice thereof. These were questions for the jury to pass upon. The fact that plaintiff testified he did not think much about it when he passed over the manhole on former occasions and did not think of its condition as being dangerous does not, in our opinion, conclusively change the situation. He was not charged with the duty of inspecting the walk to see if it was in reasonably safe condition. His mind was on other things, and, unless it was so obviously dangerous that no reasonably prudent man would risk stepping on it, his failure to realize its danger would not conclusively show that one whose duty it was to keep the place reasonably safe should likewise fail to realize it.''

Such case seems to be controlling upon the facts in this case.

In the instant case, there is no merit in defendant's contention that, because the rusted condition of the rim or flange upon which the manhole cover rested was hidden from view by the cover and was not visible except when the cover was removed, therefore the condition shown by the evidence to exist involving the security of the manhole cover was a latent or hidden condition. There is no charge in the petition that the loose and ill-fitting condition of the manhole cover was due to rusted and worn condition of the rim or flange on which it rested. The charge in the petition is only that the manhole cover was loose, ill-fitting, and too small and that it was unstable in its fittings. The proof, however, shows that the rim or flange upon which it rested was rusty, corroded, worn, and wasted; that, on one side, it was much narrower than on the other; and that it failed to furnish the proper support to the manhole cover. That such rusted, worn, and wasted condition of the flange came about only at the time of the accident is contrary to sound reason. Rust does not come in a day. Such condition as the rim or flange was shown to be in at the time of the accident was a condition not to be created in a day but one that came about gradually, over a period of time. There is evidence in this case upon which the conclusion may be based that such condition of the flange had existed for a sufficient time prior to the accident for the defendant city, in the exercise of ordinary

care, to have ascertained its existence from surface appearances and conditions of the manhole cover and known of the danger that it threatened to pedestrians and that, after ascertaining such condition and danger, it had reasonable time within which to have remedied it, prior to plaintiff's accident and injury, and could have by doing so prevented plaintiff's injury. At least, under the evidence, such question became one for the jury.

Defects are not latent if they are discoverable by the exercise of reasonable diligence. [Buckley v. Kansas City, 95 Mo. App. 188, 68 S. W. 1069.] The demurrers were rightly refused.

4. . The cases of Carvin v. City of St. Louis, *supra,* Baustian v. Young, *supra,* Buckley v. Kansas City, 156 Mo. 16, 56 S. W. 319, *supra,* and Fehlhauer v. St. Louis, *supra,* cited by defendant in its brief, are distinguishable upon the facts involved in each from the facts involved in this case. In those cases, there was a failure of proof to show defective conditions prior to the alleged injuries; whereas, in this case, there is evidence showing that the manhole cover was too small and did not fit into the groove on the flange upon which it rested but was loose and had play of one-half to three-quarters of an inch inside, in which to slide about and back and forth, and that it had not been secure in its place for a period of several years prior to the accident.

5. The defendant next complains of the action of the trial court in refusing to permit its witness Armstrong to testify as to the liability of a catch-basin's rusting so that the lid would not fit.

The witness was the Commissioner of Street Repairs for the defendant city, which position he had held for fifteen or sixteen years.

He testified that he was familiar with the catch-basin upon which plaintiff stepped and with the type of catch-basin to which it belonged. He testified as to the length of time such type of catch-basin had been in use by the defendant city and testified that he did not know when the particular catch-basin upon which plaintiff was injured was put in or how long it had been in and in use. He had made a recent examination of it, and it appeared to have been in for "quite a while." Being asked what he meant by "quite a while," he answered, "Oh, five or ten years, something or other," thus disclosing, in fact, that he had no opinion worth while on the question. He had seen many catch-basins of the same type in use by the city. He had been over every street in the city. There was a catch-basin of that type at practically every corner. His attention was called to a picture of the catch-basin in evidence, and he was asked if he could tell by looking at it how long it had been built, and he replied, "No." He was asked by counsel for the defendant city if, in his experience, he had ever known of a catch-basin of the type in use by the city rusting away to such an extent that the lid would not fit. Objection

thereto by plaintiff that such question was improper and called for a conclusion was sustained, and the action of the court in sustaining the objection to this question is the matter complained of by the defendant under this head. It appears from the record that the witness was afterward permitted to answer the question whether he could tell how long it would take for one-half inch of cast iron of the type in the catch-basin covers to rust away and that his answer thereto was that he could not.

We are of the opinion that the objection to the question was properly sustained. The question is not one involving expert knowledge. It simply sought the witness' personal experience to ascertain whether he had ever known of a catch-basin of the type in use by the defendant city rusting so that the lid thereon did not fit. Whether such had ever come within his knowledge was immaterial where the only question was whether the catch-basin in question had rusted and the lid thereon did not fit. Whether such catch-basin cover had rusted and did not fit was a question of fact dependent on the direct testimony of witnesses who had observed it and did not depend on any question of skill or peculiar experience of the witness, nor did it involve any question of scientific or professional knowledge. That cast iron exposed to weather and water will rust is a matter of common knowledge, and whether a piece of cast iron has rusted is within common observation. There is nothing of unusual, complicated, or technical nature in the determination of such a question that calls for expert testimony to advise the jury. [Benjamin v. Metropolitan Street Railway Co., 50 Mo. App. 602; Homan v. Missouri Pacific Railroad, 334 Mo. 61, 64 S. W. (2d) 617; 22 C. J. 642, art. 736.]

6. Moreover, if any question of expert knowledge was involved in the question as to the length of time within which a catch-basin would rust (which, from what has been said, we do not think there was), the witness, by his answer to a later question, disclosed that he had not sufficient skill and experience to tell how long it would require for a piece of cast iron of the same type as that in the catch-basin cover to rust. Nor did he appear to have any particular knowledge of the catch-basin in question or of how long it had been in use so that, in any event, the city was not prejudiced by the court's refusal to allow the witness to answer the question.

7. The last and final assignment of error and point made by defendant is as follows: "The court erred in refusing to reprimand respondent's counsel and in refusing to withdraw prejudicial and inflammatory remarks from the consideration of the jury and in refusing to discharge the jury because of such prejudicial and inflammatory remarks."

The first complaint under this head relates to a question asked

by plaintiff's counsel of plaintiff's father, J. C. O'Gorman, when a witness, as to whether the city manager, H. F. McElroy, sent his daughter some flowers on the day following her injury. An objection to such question (that it was incompetent, irrelevant, and immaterial) being sustained, the plaintiff's counsel urged that the purpose of such question was to show notice and the fact that the city manager thought he ought to send flowers. Following such explanation by plaintiff's counsel, the defendant's counsel asked that he be reprimanded for making such statement. No reprimand appears, however, to have been given by the court, to which action of the court in failing to rule on defendant's objection the defendant at the time duly excepted. Thereupon, the court recessed. While the court was in recess, the defendant's counsel asked of the judge that the jury be discharged because of the prejudicial character and nature of the statement, which motion was denied, to which action defendant's counsel excepted.

The court should have reprimanded plaintiff's counsel for making said remark. The city manager, H. F. McElroy, was not a party to the suit; nor was he a witness in the case. The fact that he may have known of plaintiff's injury and thought that he ought to send flowers to her was wholly immaterial and clearly outside the case. However, it does not appear that the remarks were of such character as to have seriously prejudiced defendant on the trial or to have influenced the verdict or the amount thereof so as to justify a reversal of this cause.

There was no error in the refusal by the court to discharge the jury. This motion was made during recess and after an order that the court be in recess had been entered. Furthermore, had the motion been made at the proper time, it possessed no merit and could not have been properly sustained.

Complaint is next made of the offer in evidence by plaintiff's counsel of a card sent by City Manager McElroy to plaintiff, reading: "To help the bruises. Kindest regards, H. F. McElroy, City Manager."

In connection with such offer, plaintiff's counsel stated that the card was offered as an admission by the defendant city of notice of injury. An objection to such question being sustained, defendant's counsel moved the discharge of the jury on account of improper remarks of plaintiff's counsel made in the presence of the jury prior to adjournment the evening before, which motion was properly denied. The court having sustained defendant's objection to the offer of the card in evidence, it was excluded. There is nothing left for review by this court. There was no request for reprimand. In order to have preserved for review any question of error arising from the remarks of plaintiff's counsel, at the close of the previous ses-

sions of the court, proper objection thereto should have been made at the time that said remarks were made.

Defendant next complains of the fact that plaintiff's counsel asked of plaintiff's expert witness Dr. Miers whether he had ever been called as a witness in any case where James R. Sullivan, a city counsellor, was the attorney and that its objection thereto was overruled by the court. This question was asked by counsel for plaintiff upon re-direct examination of the witness and immediately following a vigorous cross-examination of the witness by defendant's counsel, in which defendant's counsel had inquired of the witness how long he had been in Kansas City; where he had come from; whether he was on the staff of any hospital in the city and particularly on the staff of Research Hospital; and how many cases he had appeared in and testified in for plaintiffs, whether as many as one hundred or other number. The cross-examination doubtless provoked the re-direct examination, the purpose of which seems to have been to show that Dr. Miers was an expert of sufficient standing in his profession that he had been called and used by legal representatives of the city as an expert. Under the circumstances, we find no impropriety in the question asked and in the action of the court in overruling objections thereto.

The final complaint by defendant under this head relates to a remark made by plaintiff's counsel in the course of his re-cross-examination of Stewart J. Armstrong, a witness in behalf of the defendant city, following the redirect examination of such witness by the defendant's counsel.

The last question asked by the defendant's counsel of the witness upon his redirect examination and the answer thereto are as follows: "Did you state a moment ago, Mr. Armstrong, that you had never in your experience as street superintendent of street repairs for Kansas City, Missouri, removed one of these catch-basins because it had rusted out? A. I did." On re-cross-examination, plaintiff's counsel asked the following questions of the witness and elicited the following answers: "You have been here how many years? A. In Kansas City? Q. No. In this business? A. Fifteen years." Whereupon, plaintiff's counsel, Mr. Rucker, said: "Fifteen years. That is all. No wonder they fall through them." The remark of plaintiff's counsel being called to the attention of the court, the court stated that such remark, if made, had not been made loud enough for him to hear the same and overrule an objection thereto. The defendant excepted and moved that the jury be discharged, which further motion was overruled by the court.

The plaintiff's counsel does not deny that he made such remark. The remark was improper and altogether trivial and should not have been made. Side remarks by counsel should be avoided. The practice

of making them should not be encouraged. However, the remark in this instance was not of sufficient importance to warrant a reversal of the judgment of the trial court under all the facts and circumstances in the record. There is abundant evidence in the record to justify the verdict of. the jury as returned and the judgment of the court following thereon. There is no complaint upon this. appeal that either the verdict or the judgment is excessive on account thereof, and it does not appear that either the verdict or the judgment was influenced by such remark or by the failure of the court to sustain an objection thereto. The motion to discharge the jury on account of said remark was properly denied.

8. The verdict was for the right party, as likewise was the judgment entered thereon. The judgment of the trial court is affirmed. *Shain, P. J.,* and *Bland, J.,* concur.