NOVEMBER TERM, 1882. 403

Little Rock, Mississippi River and Texas Railway Co. v. Brooks et al.

## LITTLE ROCK, MISSISSIPPI RIVER AND TEXAS RAILROAD COMPANY V. BROOKS ET AL.

1. NAVIGABLE STREAMS: *What is criterion of.*
   The true criterion of a navigable stream is the usefulness of the stream to the population on its banks as a means of carrying off the products of their fields and forests, or bringing to them articles of merchandise. If, in its natural state, without artificial improvements, it may be prudently relied upon and used for that purpose at some seasons of the year, recurring with tolerable regularity, then, in the American sense, it is navigable.

2. SAME: *Evidence of.*
   It is not necessary that a stream to be navigable, be so declared by any statute of the State or United States. Usefulness for purposes of navigation for rafts, boats or barges, gives navigable character to a stream; reference being had to its natural state rather than to its average depth the year round; and this character may be proved by parol.

3. NUISANCE, PUBLIC: *Action by injured party.*
   A party who suffers injury from a public nuisance, e. q., in having his raft, boat or barge stopped by the building of a railroad-bridge across a navigable stream, may have his action against the nuisancer for damages.

APPEAL from *Drew* Circuit Court.

Hon. T. F. SORRELLS, Circuit Judge.

*Henderson & Carruth*, for appellant:

1. The stream was not a navigable stream nor river. *The Daniel Ball, 10 Wall., 563; Brown v. Chadham, 31 Maine, 9; Morgan v. King, 35 N. Y., 454; Moore v. Sanborne, 2 Mich., 519; Veazie v. Moon, 14 How., 569.*

2. But if navigable, the license or grant from the State authorizing the company to build a railroad, and for that purpose erect a bridge, is a complete defense. *Gilman v.*

*Philadelphia, 3 Wall., 724; Ill. R. R. Co. v. Peoria B. Co., 38 Ill., 467; Wilson v. B. C. M. Co., 2 Peters, 245; Houck on Rivers, pp. 128–9–30; Redfield on Railways, p. 326; ib., sec. 326 (3d ed.)*

3. If not navigable, there was no obstruction. When a river is a *public* highway, see *Angel on Water Courses, 552–3–4–5.*

*L. A. Pindall,* also for appellant:

1. A private person can not maintain an action for a public nuisance, by reason of any injury suffered in common with the public. Cites *Blackwell v. Old Colony R. R. Co., 122 Mass., 1 and 3; 4 Boston Law Reporter, 451; Brayton v. Fall River, 113 Mass., 227; Blood v. N. & L. R. R. Co., 2 Gray, 140; Brighton v. Inhabitants Fairhaven, 7 Gray, 271; Willard v. City of Cambridge, 3 Allen, 574; Fall River Iron Works v. Old Colony, etc., 5 Allen, 221.*

2. That which the law authorizes can not be proceeded against as a nuisance. (*Trans. Co. v. Chicago, 99 U. S. (9 Otto), 635; also 8 Boston Reporter, 385; Randall v. Pacific R. R. Co., 65 Mo., 325, and 5 Reporter, 178; Cooley Const. Lim., 594; 6 Barb., 313; 13 ib., 646; 1 Cain's, 177.*) The mere construction of a railroad track across a highway in pursuance to law is not a nuisance. (*N. C. R. R. Co. v. Com., 9 Reporter, 261,* credited to *23 P. F. S. Pa., 29*). A bridge authorized by law is not a nuisance nor an unlawful structure. *Miller v. Mayor, etc., 10 Reporter, 163; Higbee v. C. & A. R. R. Co., 4 C. E. Green, 276; Renard v. Cross, 8 Kans., 248; Green v. Nane Mather, 36 Wis., 50; Ashley v. White, 1 Smith Lead. Ca., 364, note.*

*McCain & Crawford* and *W. T. Wells,* for appellees:

1. The navigability of a stream is a question of fact,

and navigability in fact constitutes navigability in law. This fact properly left to the jury. *10 Wallace, 557.*

2. If legislation necessary. See *Rev. St. U. S.*, secs. *2476 and 5257.*

3. The right to construct a railroad gives no right to obstruct a navigable stream. Appellant has no such chartered right. This is an inter-state stream, and beyond State control. Congress has exclusive jurisdiction, etc. See *Rev. St. U. S., 5251; 10 Wall., 557; 13 How., 518; 3 Wall., 713.*

4. Argue upon evidence and instructions.

5. A private individual can sue for damage caused him by the obstruction of a public highway. *3 Blackstone, (Sharswood), 219–20 ; Hughes v. Heiser, 1 Binney (Pa.), 463 ; 4 Maule & Sel. (Eng.), 101 ; Powers v. Irish, 23 Mich., 429 ; Brown v. Watson, 47 Maine, 161.*

6. A stream that will float barges and timber for any considerable period is navigable. *Hickock v. Hine, 23 Ohio St., 523 ; Weis v. Smith, 3 Oregon, 445 ; United States v. Monticello, U. S. Rep., Oct. T., 1874.*

## STATEMENT.

EAKIN, J. Appellees, partners in the stave business, upon Bayon Bartholomew, brought this suit at law against the railroad company, for damages sustained by them in May, 1879, from an obstruction of the navigation of the bayou, caused by the piers of the railroad bridge. Timbers put up to strengthen the piers had so contracted the passage, that a barge of plaintiffs', loaded with staves could not pass on its way down to market, and the delays thereby occasioned were such, that, from the fall of the water meanwhile, the boat could not proceed. The plaintiffs were compelled to unload and ship by a different route, at an increased cost. All of this is duly set forth in the complaint, with the further allegations that said bayou was a public highway and navigable

stream of water, from a point above the bridge to its mouth, for the free navigation of boats, barges and other water-craft; and that the defendant was a body duly incorporated under the laws of the State. In an amendment it is stated that the bayou was free and open for the navigation of boats of the size of the one the plaintiffs used, but that a short time before the time of the injury, the defendant had added the piles to the piers which made the obstruction.

The defendant denied that the bayou was a navigable stream as stated, at the point where the bridge was built, or that the plaintiffs were lawfully floating their barge on its waters, or that it unlawfully built the bridge, or obstructed the navigation, or that the plaintiffs were hindered by its acts.

As a further defense it alleges that the bridge, substantially as it then existed, had been built by a former railroad corporation, whose property and right of way it had bought on execution; and that said former road, under the laws of the State, was duly authorized to construct and operate a road across the bayou at that point, and that the bridge structure was a part of the right of way, and that it had been so used by said former road and its successors without objection for more than ten years.

It also claims to be a common carrier of passengers, and of the mails, and that it bought the road and right of way, without any knowledge that the bayou was free to navigation, or of the claims of any one to that privilege.

Upon the trial of the issues so made, there was a verdict against the road for damages.

A motion for a new trial was overruled, and judgment was rendered accordingly. Defendant appealed.

## OPINION.

The grounds of the motion were, that the verdict was

contrary to the law and the evidence, and that the court
erred in giving instructions asked by plaintiffs, and in
refusing some asked by defendant. They will be consid-
ered in order.

We are not aware of any statute of the State, or any
official act of its officers, of which we can take judicial
cognizance, which affixes to this bayou the character of a
navigable stream. There is an ordinance of the Board of
Swamp Land Commissioners, to that effect, but that must
be considered rather as a guide for the pricing of swamp
lands in its vicinity, than as an authoritative declaration of
its character for purposes of navigation. Nor, on the other
hand, has any act been brought to our notice which
authorized the " Mississippi, Ouachita and Red River Rail-
road," of which defendant is successor, to erect at the
point in question any bridge or other structure, which
might impede the navigation of the bayou, if it be naviga-
ble. If it were in the power of the State to grant such
right, it must be clearly and explicitly given. It will not
be implied, simply because a navigable stream intervenes
between terminal points of the chartered right of way.
The road must be carried across the stream upon such
structures, or must do its business across it in such man-
ner, as not seriously to impair its usefulness to the public
for purposes of navigation. A number of cases on this
point have been collected by *Mr. Pierce in his work on Rail-
roads*, and cited in *notes pp. 201–202*.

Besides, it is not clear that the State could grant such
right, however explicitly, with regard to the Bayou Bar-
tholomew. It is a stream of sufficient importance, as a
geographical feature of our State, to become matter of
judicial cognizance. We know that it runs from our State
into the State of Louisiana, there connecting with the
Ouachita, and, through Red River, with the great commer-

cial artery of the west, the Mississippi. It thus becomes subject to the control of Congress, which has, in some sort, if it be a navigable stream, already, in a general way, taken it in hand by way of protection. It lies within the former territories of both Louisiana and Orleans, and it is provided by act of March 3, 1811, that all the navigable rivers and waters in those former territories "shall be *and forever remain* public highways." *U. S. Revised Statutes, sec. 5251.*

1. NAVI-GABLE STREAM: To be determined by jury, on proof.

It remains then to determine whether this bayou be, in fact, a navigable stream and public highway at the point in question. This was a matter to be determined by a jury upon proof of its capacity and fitness for navigation, under instructions of the court, the burden of proof being on the plaintiff.

Upon this point one of the plaintiffs, and other witnesses in their behalf, testified in effect that, from a point above the bridge, it was navigable for barges with staves, from six weeks to six months in the year; that two loaded barges were carried out in 1878. That in 1868 a steamboat had been up; that sometimes for six months in the year, but generally less, it was navigable for lumber barges, and such small steamboats as run the Arkansas River between Pine Bluff and Little Rock; that cotton had been shipped out of it, and much lumber and staves; that the lands along the bayou were well timbered, and good for farming; that steamboats had been above the locality of the bridge in 1857 and 1858. One witness testified that it was navigable for one hundred miles above the bridge.

*Per contra*, there was on this point no evidence at all.

Criterion of.

By the American doctrine, tide water, as a criterion of navigable character, has been discarded. Nor is it any objection to the public easement for navigation, that riparian proprietors of lands, along fresh waters, own to the thread

of the stream. Nor is it necessary that the stream should be capable of floating boats or rafts the whole, or even the greater part of the year. Upon the other hand it is not sufficient to impress navigable character, that there may be extraordinary times of transient freshets, when boats might be floated out. For, if this were so, almost all insignificant streams would be navigable. The true criterion is the dictate of sound business common sense, and depends on the usefulness of the stream to the population of its banks, as a means of carrying off the products of their fields and forests, or bringing to them articles of merchandise. If in its natural state, without artificial improvements, it may be prudently relied upon and used for that purpose at some seasons of the year, recurring with tolerable regularity, then, in the American sense, it is navigable, although the annual time may not be very long. Products may be ready and boats prepared, and it may thus become a very great convenience and materially promote the comfort, and advance the prosperity of the community. But it is evident that sudden freshets at uncertain times can not be made available for such purposes. No prudent man could afford the expense of preparation for such events, or could trust to such uncertainty in getting to market. The result of the authorities is this, that usefulness for purposes of transportation, for rafts, boats, or barges, gives navigable character, reference being had to its natural state, rather than to its average depth the year round. *The Montello, 20 Wallace, 430; The Daniel Ball, 10 Wallace, 557; Moore v. Sanborne et al., 2 Mich., 519; Morgan v. King, 35 N. Y., 454; Browne v. Chadborne, 31 Maine, 9.*

We think, in this view, the evidence was ample to sustain a finding that Bayou Bartholomew was a navigable stream. Of the obstruction and its consequences there was no question. Although the nuisance was a public

2. NUIS-ANCE, PUB-LIC:

Person injured may sue.

one, yet the plaintiffs had suffered special injury, and might maintain the action. The verdict was neither against law nor evidence.

Without recapitulating the instructions given by the court for the plaintiffs, against the objections of defendant, it may suffice to say they accord with the views of the law above expressed. No objection was made to the instruction regarding the measure of damages. Nor is any excess therein made ground of the motion for a new trial.

For the defendant, the court instructed the jury that, if they found the defendant had obstructed the bayou, the plaintiffs could recover only actual damages, and that they were required to use due diligence in protecting their property. Further, that if they should find, under all the circumstances of the case, that a due regard for the safety of passengers and freights required the defendant to put in the new piles, and they were removed in a reasonable time, it would not be liable. These were the fourth and sixth. The last was unduly favorable to defendant, as there was no showing of any such danger as might not have been averted by some means which would not obstruct navigation.

3. NAVIGABLE STREAM: Proved by parol.

The instructions refused were as follows: The first sets out with a statement that plaintiffs had failed to show by *any legal proof* that the bayou is a navigable stream by law. This vitiated it. Parol proof was admissible. It is not necessary that the bayou should have been declared navigable by any statute of the State or Federal Governments.

The second is to the effect that, unless the bayou was a navigable stream within the meaning of the *laws of the United States* (which must be shown by the plaintiffs), the *State of Arkansas* had the right to authorize the building

Little Rock, Mississippi River and Texas Railway Co. v. Brooks et al.

of the bridge for a highway, and having *done so* the defendant is not liable, etc.

The aim of this instruction is not clearly apparent to us. We are not advised of any diversity in the laws as to what constitutes a navigable stream. Nor can we find that the State of Arkansas authorized the building of the bridge in that particular manner, which caused the disaster to the expedition. Although, for that matter, if the stream was not navigable, no authority was necessary. Such an instruction may be literally correct, as viewed by an attorney with an analytical turn of mind, but the average juror is a plain, practical man, and might have become confused and bewildered with some vague notion that the plaintiffs ought to have shown him the particular phase of the law of the United States on the subject, and that he had brought his case within that law by the proof. The instruction was properly refused.

The third was, that the fact that the parties were able to float stave or cotton barges, and occasionally a small steamboat down the bayou, did not make it a navigable stream. This was erroneous.

The fifth was, that if the defendant had been compelled by a reasonable regard for the safety of passengers and freight to put in the piles, and the plaintiffs knew it, they should have given notice to have them removed, or the plaintiffs would be chargeable with negligence, and can not recover. This is not the law. A correct statement of the law was given upon this point, very favorable to defendant, in his sixth instruction.

We find no error in the record.

Affirmed.