KATHERINE HEIBERGER, Respondent, v. THE
MISSOURI & KANSAS TELEPHONE COM-
PANY, Appellant.

**Kansas City Court of Appeals, October 5, 1908.**

1. **EVIDENCE: Judicial Notice: Missouri River: Highway: Obstruction.** Courts take judicial notice of the fact that the Missouri river is a navigable stream, a public highway which no person or corporation has a right to obstruct.

2. **TELEPHONE: Missouri River: Obstruction: Insurer: Action.** A telephone company may lawfully string its wires across the Missouri river but must take into consideration the right of the public to navigate the same and build at such height as not to interfere with or menace navigation; while not an insurer it must use reasonable care to prevent injury to travelers on such highway and is liable for the negligent breach of such duty.

3. ————: ————: ————: **Negligence: Burden of Proof.** A traveler on the river injured by the negligence of the telephone company must show such negligence; and his boat's collision with a submerged wire resulting in injury, shifts the burden to the company to explain the presence of the wire at that place. [Hamilton v. Railroad, 114 Mo. App. 1. c. 509, distinguished.]

4. **DAMAGES: Physical Injury: Nervous Shock.** One cannot recover for nervous shock, fright, terror, alarm, anxiety or distress of mind while they are unaccompanied with some physical injury; but where there is physical injury and nervous shock the courts will not go into the connection between the two.

5. **EVIDENCE: Res Gestae: Exclamation.** Where the plaintiff is injured by the capsizing of a boat evidence as to the number that were drowned is admissible as a part of the *res gestae;* and also involuntary shrieks and exclamations of pain and suffering by the plaintiff while confined to her bed are competent.

6. ————: **Expert: Cause of Injury: Trial and Appellate Practice.** A physician may not testify that the accident caused plaintiff's condition; but where there was no objection nor exceptions saved the error is waived.

Appeal from Cooper Circuit Court.—*Hon. William H.
Martin,* Judge.

AFFIRMED.

*W. M. Williams* and *Gleed, Hunt, Palmer & Gleed* for appellant.

(1) The jury were instructed that appellant could not be held liable unless it knew or by the exercise of reasonable diligence should have known of the defect in the wires a sufficient length of time before the accident occurred to have repaired the same. This instruction was the law of the case, which the jury could not disregard. Peet v. Railroad (Ia.), 55 N. W. 508; Smith v. Pearson (Minn.), 46 N. W. 849; Railroad v. Hutchinson, 40 Kan. 51. (2) The wire fell only forty-five minutes before the accident occurred. This was not sufficient time to charge appellant with knowledge of the fact and permit it to repair the wire. Railroad v. Kent (Ga.), 13 S. E. 502. Reasonable diligence did not require appellant to repair the wire within thirty minutes. Pavey v. Railroad, 85 Mo. App. 218; Goodrich v. Railroad, 152 Mo. 222; Johnson v. Armour, 18 Fed. 490; Kelley v. Railroad, 105 Mo. App. 365; Railroad v. Low (Ky.), 21 S. W. 648; Brown v. L. & L. Co., 65 Mo. App. 162; Walker v. Railroad, 121 Mo. 575; Covey v. Railroad, 86 Mo. 643. (3) The first instruction given by the court at the request of respondent was erroneous in that it permitted the jury to allow damages for nervous shock and mental pain and anguish not caused by or connected with physical injuries. Railroad Commrs. v. Coultas, 13 App. Cas. 222; Railroad v. McGinnis, 46 Kan. 109; Brown v. Craven (Ill.), 51 N. E. 659; Railroad v. Trott, 25 S. W. 420; City v. McLean, 24 N. E. 528; Keys v. Railroad, 30 N. W. 889; Nelson v. Crawford, 81 N. W. 335; Railroad v. Anderson, 53 S. W. 673; Randolph v. Railroad, 18 Mo. App. 617; Kennon v. Gilmer, 131 U. S. 26. (4) The court, over appellant's objections, admitted evidence of the number of other persons in the boat and the number of persons drowned. This was error. The court admitted evidence of statements made by respondent re-

garding her condition long after the accident occurred, and not made to her physician. This was error, because the evidence was hearsay. Railroad v. Walker (Ga.), 21 S. E. 48; Railroad v. Kennelly (Ill.), 48 N. E. 996; Kennedy v. Railroad (N. Y.), 29 N. E. 141.

*John & J. W. Cosgrove* for respondent.

(1) The Missouri river is a navigable stream. Benson v. Morrow, 61 Mo. 345; R. S. U. S. 1878, sec. 5251. (2) A navigable stream is open to all in all its parts and no one has any right to obstruct the free and lawful use thereof. Benson v. Morrow, supra; 21 Am. and Eng. Ency. Law (2 Ed.), p. 440; Davis v. Winslow, 51 Maine 264, 80 Am. Dec. 582, note; Boom Co. v. Dixon, 77 Miss. 587, 78 Am. St. Rep. 537. (3) An obstruction is such an impediment as renders navigation less secure, convenient and expeditious. State v. Island Club, 100 N. Car. 477; 21 Am. and Eng. Ency. Law (2 Ed.), p. 443. (4) Wire cables and ropes are obstructions. Gas Light Co. v. Schooner "Game Cock," 23 Wis. 144. (5) One who obstructs a navigable stream is liable to another injured thereby. Webb's Pollock on Torts, 489; Omslaer v. Phila. Co., 31 Fed. 354; Railroad v. Brooks, 39 Ark. 403, 43 Am. R., 277; Babcock v. Herbert, 2 Ala. 392, 37 Am. Dec. 695. (6) If appellant had a right to span said river with its wires, under section 5263, R. S. U. S. 1878, it could only do so on the express condition that it so maintain them "as not to obstruct" navigation. This obligation expressly imposed appellant failed to perform and respondent was injured in direct consequence thereof. Appellant's conduct was negligent *per se.* Gratiot v. Railroad, 116 Mo. 450; Story v. Transit Co., 108 Mo. App. 424; Loth v. Theatre Co., 197 Mo. 355; Packet Co. v. Railroad; I (McCreary) U. S. C. C. 281. (7) The presence of appellant's wire in or near the water, the sinking of the launch by contact therewith, and re-

spondent's injury directly resulting therefrom, make a prima-facie case for plaintiff and defendant failed to overcome or explain away this prima-facie case. Cannon v. Gas Light Co., 145 Mo. 502; Mowry v. Norman, 204 Mo. 191; Redmon v. Railroad, 185 Mo. 14; Young v. Oil Co., 185 Mo. 634; Judson v. Powder Co., 107 Cal. 549; 48 Am. St. Rep. 146. (8) The principle of *res ipsa loquitur* applies. Hill v. Scott, 38 Mo. App. 374; Haynes v. Gas Co., 114 N. Car. 203, 41 Am. St. 786; 2 Thompson on Negligence, p. 1222.

JOHNSON, J.—Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant. Verdict and judgment were for plaintiff in the sum of twenty-five hundred dollars, and defendant appealed.

Plaintiff was injured in the evening of August 10, 1905, on the Missouri river near Boonville, where she lived. She had spent the day at Chouteau Springs and, together with nine other persons, attempted to return home in a gasoline launch of somewhat crude construction. The way pursued by the boat was downstream and along the main channel where the current runs at a speed of six miles per hour. While approaching the bridge which spans the river at Boonville, the boat collided with an obstruction in the river and capsized. The occupants were thrown into the water and several were drowned. After sinking twice, plaintiff came in contact with a log extending from a pile of driftwood which had formed at one of the bridge piers. Though almost unconscious, she instinctively clutched the log and held on with her head out of the water until rescued by a watchman at the bridge. The obstruction which wrought the havoc consisted of a wire belonging to a line of wires mantained by defendant, a telephone company. The line crossed the river at Boonville at an elevation of about fifty feet, but in some way this wire

had sagged in the middle of the span to a few inches below the level of the water at a point where the boat attempted to pass. Until it became taut, the wire yielded to the pressure of the boat against it, but it proved to be strong enough to stop further advance, and to cause the boat to career and turn over.

It is alleged in the petition "that defendant, by its servants, agents and employees carelessly and negligently permitted one of its wires aforesaid which spanned the river to drop, sag, or hang so close to or near the surface of the water for several hours, and negligently and carelessly failed and refused to remove the same after being notified thereof, and thereby rendered the navigation of said river dangerous and hazardous; . . . that such injuries and nervous shock to her system were caused and received by her in consequence of defendant's negligence and want of care through its agents, servants and employees in permitting said wire to hang and remain so near the surface of the water, and in failing and refusing to remove same after being notified thereof several hours before the accident."

The answer is a general denial. Defendant argues that the jury should have been instructed to return a verdict in its favor for the reasons, first, that defendant "had no notice and was not chargeable with notice of the condition of the wire before the accident occurred," and, second, that defendant "certainly did not have notice a sufficient length of time before the accident occurred to have enabled it to repair the wire or remove the obstruction."

Defendant's foreman of construction at Boonville, introduced as a witness by defendant, testified that at about eight o'clock in the morning of the day of the injury, he received notice from the bridgman that defendant's wires crossing the river—five in all—were too low to permit the snagboat to pass under. An inspec-

tion disclosed that the wires had too much slack, and he set his men to work tightening them. He left the work at 4:30 o'clock in the afternoon and the men left an hour later. Witness says all the wires were pulled up when he left, but does not state what the men were doing afterwards. No other evidence was introduced by defendant.

The watchman on the bridge, introduced as a witness by plaintiff, saw the wreck of the boat. He went on duty at six o'clock that evening, and fifteen minutes later noticed that one of the telephone wires swung down into the water. He immediately went to a railroad station, about three blocks away and asked the operator to telephone the information to the central office of defendant at Boonville. The operator testified: "I rang central and received a reply, and told her that the wire was down and it might come in contact with some of the boats coming up and down the river and she answered, and Mr. Ryandecker (the bridge watchman) says, 'Well, that clears us,' and with that I rang off.' Q. What time was that? A. About 6:30 I should judge." The night operator of the defendant's switchboard was on duty at that time. She stated on the stand that she received a message at about seven o'clock in the evening "that the wires were low," but she did nothing "because we had received a notification that morning before, and I supposed it was a second notification." Further, she testified that the manager of the office was a Miss Kesterson who then was off duty and the witness as night operator had no duties except those pertaining to the operation of the switchboard.

The boat came down the river sometime after the watchman returned from the railroad station. He fixes the time of the accident at about seven o'clock; other witnesses fix it at "about dusk," which at that season would be about 7:30 o'clock, as the sun does

not set until 7:08.    In any event, the evidence most favorable to plaintiff does not show that more than an hour elapsed between the time defendant's office was telephoned about the wire and the time of the accident.

We take judicial notice of the fact that the Missouri River is a navigable stream, a public highway, which no person or corporation has the right to obstruct.    [Benson v. Morrow, 61 Mo. 345; Davis v. Winslow, 51 Me. 264; Pascagoula Boom Co. v. Dixon, 28 So. (Miss.) 724; State v. Club, 100 N. C. 477; 21 Am. and Eng. Ency. of Law (2 Ed.), 440, et seq.]

We concede, for argument, that defendant in maintaining a telephone line which crossed over the highway was in the exercise of a lawful right, but the enjoyment of the right carried with it certain duties and responsibilities.    Both in the construction and maintenance of its line, defendant was bound to take into consideration the right of the public to navigate the river, and was required by the plainest principles of law, first, to build the line at a height above the water sufficient to permit the free passage under it of river boats, and then to exercise at least reasonable care to prevent it from becoming an obstruction and menace to navigation. Though not an insurer of travelers on the highway against danger of injury from fallen wires, defendant owed them the duty we have defined, and a negligent breach of such duty would afford a person injured thereby an action for the damages sustained. [Webb's Pollock on Torts, 489; Ormslear v. Phil. Co., 31 Fed. 354; Railroad v. Brooks, 39 Ark. 403.]

Though the cause of action asserted by plaintiff is grounded in negligence, and it devolved on her to prove that her injury was the direct result of the negligence averred, we think she fully discharged her burden by showing that her injury was caused by the collision of the boat, in which she was riding, with a sub-

merged telephone wire owned by defendant which constituted an obstruction to the free passage of such small river boats.　Plaintiff is not charged in the answer with contributory negligence; nor is there anything in the evidence to accuse her of such negligence.　It is immaterial that the wire might not have formed an obstruction to a larger boat nor to one equipped with a reversible engine.　Defendant was required to anticipate the presence of small craft on the river, and plaintiff was justified in relying on the presumption that defendant would throw no dangerous obstacle in the way of her boat, however small or crude it might be. Therefore, in showing that a wire owned by defendant did obstruct the passage of the boat and injured her without any fault on her part, she made out a prima-facie case of negligence against defendant which, if not rebutted, would raise a conclusive presumption of negligence.　The burden of proof shifted to defendant to explain the presence of the wire at that place.　The very fact that it was there bespoke want of care either in the construction of the line, its repair, or in the discovery and correction of an accidental displacement of the wire.　Since defendant had exclusive control of the wire and, in the ordinary course of things, an accident such as this could not happen if proper care were exercised, it accords better with the dictates of reason and justice to require defendant to exculpate itself from the imputation of negligence than to require plaintiff in her pleading and proof to put her finger on the specific act of negligence that caused her injury.　[Gannon v. Gas Light Co., 145 Mo. 502; Mowry v. Norman, 204 Mo. 191; Redmon v. Railroad, 185 Mo. 13; Young v. Oil Co., 185 Mo. 634; Brown v. Consolidated Co., —— Mo. App. ——, 109 S. W. 1032.]

Plaintiff did not disable herself from invoking the presumption under discussion by the allegation of negligence in her petition.　In Hamilton v. Railroad, 114

Mo. App. l. c. 509, where plaintiff was a passenger of defendant carrier, and was injured in a collision, we held that it would have been sufficient for him to allege in his petition, in general terms, that he was injured while being carried as a passenger as a result of the negligence of the carrier, "but when the plaintiff chooses to allege in his petition the specific acts of negligence of which he complains, he assumes the burden of proving them, and, as in other cases, must recover, if at all, upon the negligence pleaded."    In the petition before us the negligence averred covers the widest possible scope.    It embraces any and all acts of negligence, whether of construction, repair, inspection, or diligence to discover and remedy a fortuitous displacement of the wire.    Obviously, the rule followed in the Hamilton case is without application to a cause thus pleaded, and the conclusion necessarily follows that the facts adduced by plaintiff placed upon defendant the burden of rebutting the presumption that the obstruction caused by the wire was not due to its negligence.    This presumption might be overcome by the showing that the falling of the wire was not the result of negligence in the construction and maintenance of the line, and that defendant had neither actual nor implied notice of the fact that it had fallen in time to have removed the obstruction by the exercise of reasonable care.    The most that might be said in favor of defendant is that the facts and circumstances in evidence present the issue of its negligence as one of fact for the solution of the jury.    On the hypothesis presented by the testimony of the construction foreman that the wires all were tightly strung and in good condition when he left the work at 4:30 o'clock, and conceding, *arguendo*, that the message sent to the telephone office at six o'clock was not given in time for defendant to remove the obstruction, nor to a proper agent or servant of defendant, still the conclusion is most reasonable

that defendant has failed completely to exculpate itself from the charge of negligence because it has failed to furnish any reasonable evidentiary explanation of the cause of the fall of the wire. Its foreman had notice that morning that the wires were out of order. He did not know, nor does defendant attempt to show, what the workmen did to them after he departed. It was within the power of defendant in discharging its burden of proof to show by evidence the condition in which the workmen left the wires, and in the absence of a showing to the contrary, the jury were entitled to the inference, either that the wire was down in the water when the work was stopped that evening, or that it fell afterwards on account of negligence in repair work done that day. It goes without saying that the jury was not bound to believe the testimony of the foreman but had a right to reject his statement that the wires had been properly repaired before he left, and to infer from the physical fact that the wire was down, the further fact that the repair work had not been properly done. It follows from what has been said that no error was committed in overruling the demurrer to the evidence, nor is error to be found in the instructions relating to the issue of negligence. They submitted that issue in substantial conformity to the views of the law just expressed.

Objection is made to the following portion of the first instruction given at the instance of plaintiff: "and that plaintiff was thereby physically injured, bruised and made sore and her nervous system greatly shocked and impaired, and that such physical injuries and nervous shock, if any, caused plaintiff bodily suffering and mental pain and anguish, etc." The point advanced is that, as the evidence does not show any relation between the nervous shock suffered by plaintiff and any physical injury received, she is not entitled to recover damages on account of such shock. The evidence shows

the infliction of physical injuries of a severe nature. In addition to being bruised on her arm and shoulder, plaintiff took into her lungs a large quantity of muddy water which caused her to have severe pain in her lungs for several weeks. She was unconscious for some time after her rescue and for a long time her mental condition was most alarming. She lost twenty-four pounds in weight and for months bore every indication of suffering severe physical as well as mental pain. The rule is well settled in this State that there can be no recovery for nervous shock, fright, terror, alarm, anxiety or distress of mind if these are unaccompanied by some physical injury. [Crutcher v. Railroad, — Mo. App. —, and cases cited.] But as was said by the Supreme Judicial Court of Massachusetts in Homan v. Railway, 62 N. E. 737, the rule is an "arbitrary exception based upon a notion of what is practicable, and should not obtain in cases where physical injuries and nervous shock concurrently result from the same battery." In most cases, as in the one before us, it would be in the highest degree speculative to go into the question of whether the nervous shock came through the battery or along with it, and we agree with the Massachusetts court that "when the reality of the cause is guaranteed by proof of a substantial battery of the person, there is no occasion to press further the exception to the general rule."

Objections are made to rulings of the court on the admission of evidence, but they are not well founded. The number of persons in the boat, and the number drowned were facts belonging to the *res gestae,* and to admit proof of them was not reversible error. [Estes v. Railroad, 110 Mo. App. 731.] The testimony relating to the involuntary shrieks and exclamations of pain and suffering emitted by plaintiff while confined to her bed also was competent. [Estes v. Railroad, supra.]

It was incompetent to ask plaintiff's physician to state whether, in his opinion, the accident caused the condition in which he found plaintiff, but as no objection was interposed by defendant nor exception saved, the error was waived. We do not regard the verdict as excessive. The record shows the cause was fairly tried and properly submitted in the instructions given to the jury and, in our opinion, the verdict was for the right party. The judgment is affirmed. All concur.