Anna BEDENK, Plaintiff-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant.

No. 44865.

Supreme Court of Missouri.

Division No. 1.

Dec. 12, 1955.

Motion to Modify Opinion and for Rehearing or to Transfer to Court en Banc Denied Jan. 9, 1956.

Lester F. Stephens, St. Louis, Lloyd E. Boas, St. Louis, of counsel, for appellant.

Orville Richardson, Sherman Landau, St. Louis, Hullverson & Richardson, St. Louis, of counsel, for respondent.

DALTON, Presiding Judge.

Action for damages for personal injuries sustained on account of alleged negligence of defendant. Verdict and judgment were for plaintiff for $8,000 and defendant appealed.

On July 19, 1952, plaintiff, a resident of Livingston, Illinois, was a passenger on defendant's northbound bus in Pine Lawn, St. Louis County, when it stopped to discharge passengers at Grimshaw Avenue and Jennings Road, which was plaintiff's destination. Plaintiff and her five year old daughter attempted to leave the bus by the right rear door. Plaintiff took her daughter's left hand in her right hand and was leading the child ahead of her in getting off the bus. The child was almost out, when the bus door closed on plaintiff's right arm, injuring it and causing plaintiff to lose her grip on the child's hand. The child's foot was caught in the door at the same time, but the main part of the child's body was outside of the bus. The bus pulled up a few feet and the child was killed. Plaintiff's arm was bruised and she was immediately taken to a hospital and, later that day, to her home in Livingston, Illinois. She visited her family physician on the following day. The arm was bruised, swollen and subsequently discolored, light green and yellow. The swelling and discoloration were due to trauma. The bruise on the back and front sides of the arm extended for some two to three inches between the wrist and elbow. Scar tissue, which formed as a result of the trauma, has caused pain. The arm still "hurts almost all the time." She alternately has both sharp and dull pains in her arm. She reported this fact to her physician on her first trip to see him. The pain runs from her arm up across her left shoulder and up to her head. There is a marked tremor of the eyelids and of the extended hands. She has a buzzing in the left side of her head. She has "lots of headaches and pains in her head, in the front part," and her "stomach hurts a lot." She is not able to rest and sleep at night. She thinks a lot and has bad dreams. She has been continuously under the care of her physician since she was injured. There has been no improvement in her condition. An expert in mental and nervous diseases, Dr. James F. McFadden, diagnosed her condition as a functional nervous disease, or neurosis, also called psychoneurosis, resulting from her physical injury under the circumstances shown. Her condition is permanent and she will continue to require medical care.

Previous to her injury plaintiff, age 40, was in good health. She did her own cleaning, her washing and ironing, and, also, her general house cleaning in the spring and fall. Her husband did not help her with her work. She had no trouble with her right arm. There were no buzzing, or crawling sensations or headaches. She slept well. She also tended her flowers in the garden and worked in the yard. Since her injury her husband often helps her do the washing, he does a lot of the cooking and helps with the heavy cleaning. She is right handed but now she has to iron "mostly" with her left hand. The grip in her right hand is weak. Other evidence tended to show that before she was injured she was of a happy disposition, jolly and good natured, but since that time she doesn't feel good and she complains of pains in her arm and head, of headaches, of a crawling sensation and buzzing sound and talks of dreams. Her mental attitude has changed. She does not participate in community life like she did. She is quite forgetful and does not like to go out or be in crowds. She just sits at home and hardly says anything, but complains of her head, stomach and arm. Other facts will be stated in the course of the opinion. The issue of negligence was submitted under the res ipsa loquitur doctrine. There is no contention here that plaintiff failed to make a submissible case for the jury.

Error is assigned on the admission and rejection of evidence, on the opening statement and closing argument of plaintiff's counsel, on the giving and refusal of instructions, on the refusal to strike certain evidence, on the refusal of the court to stay proceeding after plaintiff's evidence was in, on the limitations placed on the scope of the closing argument of defendant's counsel and on an alleged excessive verdict.

Appellant's first assignment is that "the Court erred in admitting, or refusing to strike after it was admitted, the * * * testimony specifically set out in subparagraphs (A), (B), and (C) below (offered and admitted on the part of plaintiff over the objection of the defendant) for the reasons stated in the individual subparagraphs below. (A) The Court erred in refusing to strike the testimony of Dr. Greenwood concerning plaintiff's nervous (or psychic) condition allegedly existing after a period of two to three months following the accident for the reason that it was proven by the doctor's own testimony not to be the direct result of any injury plaintiff received on the occasion in question."

Dr. W. R. Greenwood was plaintiff's family physician, a general practitioner at Livingston, Illinois. He treated plaintiff from July 20, 1952, the day following her injury to the date of the trial. Over the objection of defendant he testified at length concerning plaintiff's physical and nervous condition during this period. He attributed a part of her general condition (at the time of his first examination) to her arm injury. He refused to say how much of her nervousness was due to pain in her injured arm. With reference to the cause of her condition, he testified: "Q. Can you give us your opinion as to what might have been the cause of the condition of nervousness three months after July 19, 1952? A. Yes; in my opinion she was still nervous after the original injury because of the association with this arm and some of the things that had transpired in her life, and this arm was the subjective stimulus in her opinion for all of this emotional upset. Q. That would be psychic? A. In my opinion, yes, that would be." He also said: "I think there are two factors with this patient, as I see them, that is causing her to be in the state she is at the present time. Those two factors are: injury to her arm and the emotional stress and strain due to the loss of this child * * *. I cannot say in percentage how much is due to one and how much to the other. * * *" He further said: "It is my opinion that the fact she had contact with the child and lost it, that now that was her last contact with this living child, and now there is an association or transference of pain in this arm because of the fact." Near the close of Dr. Greenwood's testimony, defendant moved the court to

strike from the record all of the testimony of the witness "concerning the psychic disorders from which this woman is said to be suffering at the present time." (November 8, 1954). The motion was based upon a specific part of the cross-examination of the witness, as follows:

"Q. In your experience as a doctor how long would any condition of nervousness or upset have prevailed in this woman as a result of any injury she might have received to her right arm on that occasion, how long would that condition continue to affect her? A. To a direct injury itself that might go for two or three months. * * *

"Q. So anything you treated her for after September 19, 1952, would have had no relationship to any condition that might have been the result of getting her hand caught in the door? A. I cannot answer that question.

"Q. What do you mean when you say you cannot answer that question? A. Because we know that if there are certain associations with injury then that nervousness and a functional thing in the nervous system may set in. * * *

"Q. So, far as that trauma this lady received as a result of getting her hand caught in the door, the direct results of the nervousness would have disappeared at the end of two months? A. Two or three months, if I understand what we mean by nervousness."

For reasons hereinafter stated, we need not further review the witness's testimony.

■ Appellant contends that "Dr. Greenwood's testimony did not show the psychic condition, from which he said plaintiff suffered starting with a period two to three months after the accident to the present time, was a 'direct consequence of the physical injury'"; that the burden was on the plaintiff to establish this causative factor; and that "when Dr. Greenwood's testimony failed to do so it should have been stricken." Appellant relies upon the general rule as to recovery for mental distress or suffering as stated in Chawkley v. Wabash Ry. Co., 317 Mo. 782, 808, 297 S.W. 20, 29, as follows: "The rule is that mental distress, suffering, may not be recovered for unless directly caused by a physical injury. The plaintiff could not recover for impairment which the evidence showed to be in her physical and mental condition, unless that particular impairment could be traced directly to the physical shock or physical wounds or bruises inflicted upon her." And see Trigg v. St. Louis, K. C. & N. Ry. Co., 74 Mo. 147, 153; Porter v. St. Joseph Ry., Light, Heat & Power Co., 311 Mo. 66, 277 S.W. 913, 914; State ex rel. and to Use of Renz v. Dickens, Mo. App., 95 S.W.2d 847, 852. Appellant further says that Dr. McFadden's testimony has nothing to do with the point raised; and that the testimony of Dr. McFadden as to the cause of plaintiff's condition would not cure the error, since a jury might believe Dr. Greenwood and find Dr. McFadden unworthy of belief. We find no merit in this assignment.

■ It was immaterial whether Dr. Greenwood's own testimony was sufficient to show that plaintiff's nervous condition, or the psychic disorders from which plaintiff was suffering at the time of the trial, were, or were not the direct result of the physical injury she received. Plaintiff could show her physical and nervous condition by one witness and show causation of such condition by the testimony of another witness and, if she has done so, as we find she has, no reversible error appears either in the introduction of the evidence, or in the refusal to strike the evidence after it was offered. Seithel v. St. Louis Dairy Co., Mo.App., 16 S.W.2d 687, 689(3). "As a general rule, the order of introducing evidence upon the trial of a cause is a matter which lies in the sound discretion of the trial court, and, unless the trial court has palpably abused such discretion, to the prejudice of the complaining party, an appellate court will not interfere with the trial court's action, or hold such action of the trial court to constitute reversible error." Meyers v. Drake, 324 Mo. 612, 24 S.W.2d 116, 121. Further,

the plaintiff would not be bound by the testimony of a single witness as to causation, if adverse, if there were other favorable testimony on the same issue. See Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S.W. 764, 773; Barnum v. Hutchens Metal Products, Inc., Mo.Sup., 255 S.W.2d 807, 808; Schroer v. Brooks, 204 Mo.App. 567, 224 S.W. 53; Spencer v. Anderson, Mo.App., 229 S.W. 226. The assignment is overruled.

In its reply brief, appellant says that subparagraph (A) also presents an issue as to whether Dr. Greenwood's opinion was based partly on observation and partly on hearsay and was, therefore, incompetent. No such issue is presented under points relied on. 42 V.A.M.S. Supreme Court Rules, rule 1.08.

In subparagraph "B", appellant complains "that the Court erred in permitting plaintiff's counsel to make remarks in his opening statement concerning, and in admitting testimony concerning, (1) the catching of the plaintiff's daughter in the bus door, and (2) the death of plaintiff's daughter, for the reason that such matters were irrelevant and immaterial to the issues in this case and were highly prejudicial, and such matters show an attempt to wrongfully induce this jury to award damages for the loss of plaintiff's daughter."

In his opening statement, plaintiff's counsel stated: " * * * while it was stopped and before she alighted the bus doors suddenly and without warning closed on Mrs. Bedenk's arm and the child's right foot was caught in the door. People, seeing that, screamed and hollered to the bus driver to stop, and he pulled up about six feet. The child was killed and Mrs. Bedenk was left there."

In plaintiff's case there was no statement or evidence as to how the child was killed, other than that the child's foot was caught in the door at the time plaintiff's arm was caught, and that the bus moved forward. The court further refused to permit direct testimony that the child was killed, until that fact appeared in the cross-examination of defendant's bus operator after the witness had given testimony indicating that nothing unusual had happened, although admitting that a stop was made and the plaintiff was present. The witness said the bus doors were clear when he closed them. "I checked the rear door, the well was clear, and I closed it." He didn't see anyone's arm caught in the door. "There was nobody in the doors." He said it took three to five seconds for the door to actually close. The doors were operated with 65 to 80 pounds of air pressure. He didn't see plaintiff or her child get off the bus. No child's foot was caught in the door and if a woman had been standing there he would have seen her. At that time, over objection, he was asked if a child was not killed on that occasion and he answered "Yes." The cross-examination was proper. Appellant subsequently concedes that "the matter of the death of plaintiff's daughter was before the jury by innuendo and by the affirmative answer to the question asked the bus driver, defendant's witness, on cross-examination."

Appellant relies upon Chawkley v. Wabash Ry. Co., supra, 297 S.W. 20, 29, but the facts are materially different. Plaintiff here made no effort to prove the detailed facts attending the death of the child. Further, we think the evidence as to the closing of the doors on the child's foot as the result of the same act and movement that caught the plaintiff's arm was so closely associated with the movement of the bus, the death of the child and the injury to plaintiff as to be a part of the same facts and admissible as a part of the res gestae. The whole thing happened in a brief space of time and constituted a single occurrence. The fact of the death of the child could hardly be eliminated from any description of what occurred and was clearly a part of the occurrence. See Gaty v. United Rys. Co., Mo.Sup., 251 S.W. 61, 66; Kleiber v. People's Ry. Co., 107 Mo. 240, 254, 17 S.W. 946, 14 L.R.A. 613; Stofer v. Harvey, Mo. App., 204 S.W. 587, 588; Grubb v. Kansas City Rys. Co., 207 Mo.App. 16, 230 S.W. 675, 681; Wagner v. Webb City, Mo.App., 168 S.W.2d 596, 598; Heiberger v. Mis-

souri & Kansas Telephone Co., 133 Mo. App. 452, 462, 113 S.W. 730; 20 Am.Jur., Evidence, Sec. 667, p. 558.

Res gestae has been defined as "those circumstances which are the automatic and undisguised incidents of a particular litigated act, and which are admissible when illustrative of such act; indeed, must be in contemplation of law, a part of the act itself." Redmon v. Metropolitan St. Ry. Co., 185 Mo. 1, 11, 84 S.W. 26, 29. The assignment is overruled.

In subparagraph (C), appellant contends that "the Court erred in permitting plaintiff's witness, Dr. James F. McFadden, to testify over defendant's objection that plaintiff was not faking and that her complaints were real."

■ In Dr. McFadden's examination of plaintiff he noted a marked tremor of the eyelids and of the extended hands. He was asked whether there was anything that indicated the tremor "was simulated—or was it involuntary." Over objection that he was being asked to pass on the credibility of the witness, he answered that in his opinion "no one could imitate that type of tremor." Appellant relies upon the case of Henson v. Kansas City, 277 Mo. 443, 210 S.W. 13, but the Henson case was fully considered by this division in the case of Eickmann v. St. Louis Public Service Co., 363 Mo. 651, 253 S.W.2d 122, 129–131, and a contrary conclusion reached. On the basis of the latter opinion and the authorities therein cited the assignment is overruled.

Appellant contends that "the court abused its discretion by refusing to grant a stay of proceedings from Wednesday, November 10, 1954, until Monday, November 15, 1954, in order to permit defendant to produce its examining physician."

■ The trial began on November 8, 1954, and, after the conclusion of plaintiff's evidence and after the court had overruled defendant's motion for directed verdict, defendant on November 10, 1954, moved for a stay of proceedings until November 15,

1954, on account of the absence of defendant's witness Dr. A. B. Jones, who had examined plaintiff. No subpoena had been issued for the witness until after the cause went to trial, nor did defendant's counsel telephone the witness to determine his availability, nor object to proceeding with the trial in his absence. Appellant argues that it had offered $3500 in settlement of the case and that it did not expect the case to go to trial and so had not subpoenaed or notified Dr. Jones. The motion was "denied for lack of diligence and under the rules of this court not having been presented in Division One prior to the assignment of the cause for trial." At the close of defendant's evidence on the same date defendant orally again requested a delay until November 15, but the oral request was denied for the reasons assigned for denying the written motion, plus the statement that "the court does not propose to tie up this division and these jurors from Wednesday to Monday, notwithstanding tomorrow is a holiday." No abuse of the court's discretion appears from this record. Commercial Nat. Bank of Kansas City, Kansas v. White, Mo.Sup., 254 S.W.2d 605, 607. The assignment is overruled.

■ Appellant contends that "the Court erred in excluding defendant's Exhibit 'D', which was the official court record, in the same court, of the trial of the 'wrongful death' action for the death of plaintiff's daughter, wherein plaintiff and her husband recovered a verdict of $11,000.00, which was 'satisfied.'" Appellant says the matter was "competent, relevant and material evidence, and it was imperative that the jury be informed that plaintiff and her husband had been compensated for the loss of their daughter so they would not here award plaintiff damages for any such loss." Appellant's theory is that the death of plaintiff's daughter was improperly admitted and that defendant had the right to use "curative counter-evidence" on the ground that it was necessary for removing an unfair prejudice which might have ensued from the evidence of the daughter's death. See Biener v. St. Louis Public Service Co., Mo. App., 160 S.W.2d 780, 785. We think the

fact of recovery for the death of the child by plaintiff and her husband, the amount thereof and that it had been paid by defendant was wholly irrelevant to any issue in the case on trial. The exhibit was properly excluded. The matter of damages for the child's death was effectively excluded by instructions given. The court instructed the jury (Instruction No. 11) "that Mrs. Bedenk is not entitled to recover damages on account of any pecuniary losses, if any, resulting from the death of her child, Joyce," and in Instruction No. 10, that " * * * and, under no circumstances are you permitted to award plaintiff any damages to compensate her for a mental condition, fright, nervousness, emotional shock or psychoneurosis which resulted from the death of her daughter." The assignment is overruled.

Appellant contends that the court erred in giving Instruction No. 12 on the measure of damages for the following reasons (1) that it authorized double recovery, since in the first paragraph it told the jury "you may take into consideration * * * the nature, character and extent of such injuries, if any * * * and (in the third subparagraph) "such mental anguish, nervous shock, and psychoneurosis, if any, as you find from the evidence that Mrs. Bedenk has suffered in the past and is reasonably certain to suffer in the future as a direct result of such occurrence and physical injury, if any"; (2) that it singles out "psychoneurosis" and gives it undue prominence and emphasis in said third subparagraph and by inference suggests there is a difference between mental anguish, nervous shock and psychoneurosis; and (3) that there is no substantial evidence to support a recovery for "psychoneurosis" since there is no evidence that it was caused by plaintiff's arm being caught between the rubber edged bus doors or by the injury to her arm. Appellant says the burden was upon the plaintiff to show causation by substantial evidence, but that "the testimony of plaintiff's two medical experts on the causative factor" of the psychoneurosis amounted to no more than "surmise, speculation and guess work." Appellant cites

Hunt v. Armour & Co., 345 Mo. 677, 136 S.W.2d 312, 316, where it is said: "It is now settled that, in matters where the evidence does not exclude all other causes and in which no laymen could know or have any reasonable basis for an inference as to cause, opinions of doctors that a certain occurrence or condition might, could, or would produce a certain result is no more than an assurance that such a result was scientifically possible, and does not alone constitute substantial evidence that such occurrence or condition did cause it." Appellant also refers to Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 646, where this court said: "The burden was on the plaintiff to show the cause. Evidence that the condition might or could have been caused by either injury or disease without any substantial showing as to which of the possible causes did produce the condition, furnishes no basis from which a jury could determine the cause."

Instruction No. 12 did not authorize double recovery. It would have been understood only to tell the jury that if they found for the plaintiff they could take into consideration both the nature, character and extent of her physical injuries and also the mental anguish, nervous shock and psychoneurosis resulting from such physical injuries. Psychoneurosis was not given undue prominence and there was substantial evidence to support the instruction. In this connection, Dr. James F. McFadden defined psychoneurosis as "a condition in which there is no demonstrable structural change in the nervous system, but there is a disturbance in the function. That is why they call it a functional nervous disease. And they call it a psychoneurosis because of the fact that a number of complaints are of a psychic nature, such as complaints of disturbed memory, nervousness, dizziness, but still there are no organic changes to account for them." Even appellant reviews Dr. McFadden's testimony on this issue as follows: " * * * he made a diagnosis of 'functional nervous disease,' or a 'neurosis'—which some call a 'psychoneurosis.' " The testimony of Dr. McFadden, who had specialized in the treatment and care of nervous and

mental diseases for some forty years, tended to show that plaintiff was suffering from psychoneurosis; that the psychoneurosis of which plaintiff suffered "could have been with reasonable medical certainty, due to this experience she had of getting her hand caught in the bus door"; and that in his opinion, getting her arm caught in the door under the circumstances shown was a direct, substantial and contributing cause of the psychoneurosis of which she now suffers. The witness testified:

"Q. State whether or not, in your opinion, the psychoneurosis is due to the closing of the door on the arm which had ahold of the child's hand, the grip of which she lost? A. It is my opinion that it was."

The witness further testified:

"Q. Can you tell us * * * can you distinguish to the court and jury between this matter of the door closing on this lady's arm and the loss of grip of her child; can you tell us, or do you have an opinion whether or not this lady would have had no psychoneurosis, which you diagnosed June 3, 1953, had she merely had the door closed on her arm? A. I have an opinion that she could have had it with just the one alone, yes.

"Q. What do you mean 'could have had it'? A. That could be considered a cause—one cause—of psychoneurosis.

"Q. Then you took into consideration this other element of losing the grip on the child's hand, is that correct? A. That is also another causative factor.

"Q. Which one of those two, in your opinion as a medical doctor, with reasonable medical certainty, would be the most likely to cause the psychoneurosis? A. I think both of them did."

██ It will be noted that appellant makes no reference to or complaint of the fact that Instruction No. 12 permits a recovery for physical pain, mental anguish and nervous shock, but complains only that the record contains no substantial evidence that plaintiff's "psychoneurosis" was caused by the injury to her arm. However, there is substantial evidence that "plaintiff's nervous (or psychic) condition allegedly existing after a period of two to three months following the accident" was the direct result of the injury plaintiff received on July 19, 1952, and under the circumstances shown. The instruction is not subject to any of the criticism leveled against it. Pierce v. New York Cent. R. Co., Mo.Sup., 257 S.W.2d 84, 89; Laycock v. United Rys. Co. of St. Louis, 290 Mo. 344, 235 S.W. 91, 95(7); Spalding v. Robertson, 357 Mo. 37, 206 S.W.2d 517, 523.

██ Appellant complains of the refusal of Instructions A, C, D, E, J, and K. The content of Instruction A was sufficiently covered by Instruction No. 4 given at defendant's request. The content of Instruction C was sufficiently covered by Instructions Nos. 2, 3, and 10. The record shows that defendant requested the court to give Instruction C and it was refused. In its motion for a new trial defendant complained of its refusal. Appellant now contends not alone of its refusal, but also that "the defendant should have been permitted to give defendant's Instruction 'C' (in lieu of defendant's Instructions Nos. 2, 3, and 10) for the reason that the additional language of said instruction would tend to take out of the case this false issue concerning 'the losing of the grip on her daughter's hand,' which the language referred to above from plaintiff's Instructions Nos. 1 and 12 put in the case." The latter specific issue was not presented to or ruled upon by the trial court and it may not now be considered. Section 512.160, subd. 1 RSMo 1949, V.A.M.S.

Appellant says that Instructions Nos. D and E should have been given "for the reasons that the evidence left the issue of the cause of plaintiff's psychoneurosis in doubt and that there was no substantial evidence that psychoneurosis was directly caused by the injury." The grounds relied upon have been heretofore ruled against appellant.

Appellant says: "The Court erred in refusing to give and read to the jury defendant's offered Instructions 'J' or 'K' for the reason that the plaintiff and her husband had been paid $11,000.00 by the defendant for the loss of their daughter and should not here recover again for the same loss." Either of these instructions would have told the jury that "plaintiff and her husband have already recovered and received from the defendant any and all of the money which they are entitled to receive as damages under the law for the death of their daughter." In view of Instructions Nos. 10 and 11 hereinbefore referred to, we think Instructions J and K were properly refused.

Appellant next contends that "the Court erred in refusing to sustain defendant's objections to illegal, improper, inflammatory arguments and arguments unsupported by the evidence made by plaintiff's counsel wherein defendant's counsel was personally attacked and wherein arguments were made to inflame the jury and to build a feeling of hostility and to gain unfair advantage." This assignment is extremely general. No specific argument is referred to except by the most general descriptive terms. The substance of no argument is stated and there is no reference to where in the record the particular erroneous court rulings may be found. In the printed argument, appellant complains of many things as affecting the amount of the verdict and particularly of the following statement by plaintiff's counsel: "I hope you won't leave this courthouse * * * believing that all members of our profession * * * are like Mr. Stephens. We are not all like that. It distresses me a great deal that someone who might have had something to assist you in your duties did nothing but level an unwarranted and scurrilous attack on decent people. I hope you won't be discouraged by that experience. I hope if you are ever hurt, or ever come to court for any other reason * * * please don't stay out of court because you might be afraid of some vicious, snarling dog with a frothy mouth—." An objection was made and sustained and, upon further request, the jury was directed to disregard the characterization. A request for reprimand was not granted. There was no request to discharge the jury. To better understand the court's refusal to reprimand, one would have to read the record wherein it appears that appellant defended the case on the theory that it was framed, false and fraudulent. Counsel sought to try the plaintiff, her counsel and her witnesses in the course of the trial and his argument was on a basis that would tend to stir up personal animosity. The argument of plaintiff's counsel was highly improper, but clearly retaliatory, and in view of the whole record, we cannot say that the trial court abused its discretion in failing to reprimand plaintiff's counsel, or that such failure in anywise prejudiced the appellant. Burow v. Red Line Service, Inc., 343 Mo. 605, 122 S.W.2d 919, 921(5); Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S.W.2d 54, 62(12). Even if the court should have reprimanded plaintiff's counsel, it does not follow that the judgment should be reversed in view of the record presented and the trial court's refusal to grant a new trial. Irons v. American Ry. Express Co., 318 Mo. 318, 300 S.W. 283, 292(17); Johnson v. Terminal R. Ass'n, 354 Mo. 800, 191 S.W.2d 676, 682; O'Gorman v. Kansas City, 233 Mo.App. 124, 93 S.W.2d 1132, 1138(7); Adams v. Carlo, Mo. App., 101 S.W.2d 753, 760(19).

Appellant contends that "the Court erred in improperly limiting the scope of the argument of the counsel for defendant when counsel attempted to draw an inference from the evidence and counsel was improperly reprimanded and he was prevented from making a reply to plaintiff's argument." Again the assignment makes no specific reference to the record or to any specific rulings, but many matters are complained of in argument. However, no reversible error appears from any of the rulings therein referred to. Defendant's counsel argued that "they decided the arm had to be hurt if she (plaintiff) was to recover" and that Dr. Greenwood's records were falsified after litigation was contemplated. On objection that there was "no evidence any-

body 'decided' anything," the Court sustained the objection. In so ruling the court did not hold there was "no evidence of a late entry" as contended by appellant. Nor was counsel improperly rebuked and reprimanded by the sustaining of a motion to rebuke, followed by the words: "That is improper, to tell the jury what they may or may not take to the jury room. That is a matter for the court to decide." Nor do we find that the court improperly limited defendant's "reply argument" as to its failure to produce Dr. Jones who had examined plaintiff at defendant's request. The assignment is overruled.

Finally, appellant contends that the verdict and judgment is excessive. Appellant argues that plaintiff could not have received any substantial injury; that the bus door closed only on her forearm between the wrist and the elbow; that the "treatment consisted of vitamins and sedatives to take and liniment to rub on her arm"; that plaintiff was a housewife; that "there was no organic basis for any objective findings for her complaints"; that plaintiff's complaints "were psychic because of 'association' with this arm"; that "the causative factor * * * was left to speculation, surmise and guesswork"; and that "the alleged 'injuries,' at best, rest largely in the mind of the plaintiff." Appellant argues that, if no other relief is granted, the verdict must be "substantially reduced to be in conformity with judgments in cases involving similar injuries." Appellant cites Nolan v. Joplin Transfer & Storage Co., 239 Mo.App. 915, 203 S.W.2d 740, loc. cit. 748 (where a jury verdict of $5000 for an arm injury was held not excessive); Hall v. St. Louis Public Service Co., Mo.Sup., 266 S.W.2d 597 (where a $3500 verdict for superficial traumatic injuries was reduced to $1500); Wellman v. Metropolitan St. Ry. Co., 219 Mo. 126, 154, 118 S.W. 31 (where a $7000 verdict returned prior to 1909 was reduced to $3500, apparently on the ground that the injured condition rested largely in plaintiff's mind).

 We have previously reviewed the evidence concerning plaintiff's injuries and present disabilities and need not review them further. When the evidence is considered favorably to plaintiff and to the verdict of the jury the verdict is not excessive. See Tate v. Western Union Telegraph Co., 339 Mo. 262, 96 S.W.2d 364, 367 (5).

The judgment is affirmed.

All concur.